SIMEON W. BREWER

*v.*

THE NATIONAL UNION BUILDING ASSOCIATION.

*Filed at Ottawa April 3, 1897.*

1. REAL PROPERTY—*surrender of particular estate must be by mutual agreement.* A surrender is the yielding up of an estate for life or for years to him who has the immediate reversion or remainder, wherein the particular estate is extinguished by mutual agreement between the parties.

2. LANDLORD AND TENANT—*surrender of a lease may be express or implied.* A surrender of a lease may be in express words manifesting the lessee's intention to yield up his interest to the lessor, or it may be by operation of law from acts which imply that both parties have agreed to the surrender.

3. SAME—*mere cancellation of lease is not of itself a surrender.* The cancellation of the lessee's copy of a lease by the lessor will not release the lessee from liability for rent, where the parties, by their subsequent conduct, show that they do not regard the cancellation of the lease as a surrender.

4. APPEALS AND ERRORS—*general objection that trial court erred in refusing instructions is insufficient.* A general objection that the trial court erred in refusing instructions, without attempting in any way to point out in what the error consists, is not sufficient to demand consideration by a court of review.

5. TRIAL—*the conduct of trials as to permitting delay rests with the court.* The conduct of trials as to permitting delay on account of tardiness of counsel, etc., rests in the sound legal discretion of the trial court, with which discretion courts of review will not interfere, in the absence of abuse.

*Brewer* v. *National Union Building Ass.* 64 Ill. App. 161, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

ALLAN C. & F. W. STORY, for appellant:

Any agreement between the landlord and the tenant that the term shall be terminated, which agreement is unequivocally acted upon by both parties, will operate as a surrender by operation of law. *Schieffelin* v. *Carpenter,*

15 Wend. 400; *Bedford* v. *Terhune,* 30 N. Y. 453; *Wilmans* v. *Watry,* 31 Wis. 638; *Clemens* v. *Broonfield,* 19 Mo. 18; *Phene* v. *Popplewell,* 12 C. B. 334; *Hall* v. *Burgess,* 5 B. & C. 333.

When one seeks to avoid a contract he must restore, or offer to restore, whatever he has taken under it in its original condition, and to place the other party *in statu quo. Smith* v. *Doty,* 24 Ill. 163; *Gehr* v. *Hagerman,* 26 id. 438; *Anderson* v. *White,* 27 id. 57; *Insurance Co.* v. *Botto,* 47 id. 516; *Ellington* v. *King,* 49 id. 449; *Strong* v. *Lord,* 107 id. 25; *Wiley* v. *Stewart,* 122 id. 470; *Harding* v. *Parshall,* 56 id. 219; *Dowden* v. *Wilson,* 108 id. 257.

Where one, by his words or action, causes another to believe in the existence of a certain state of things, and thereby induces him to act on that belief so as injuriously to affect him, he is precluded from averring a different state of things as existing at the time. *Cowles* v. *Bacon,* 21 Conn. 451; *Bank* v. *Dennis,* 37 Ill. 381.

HAMLINE, SCOTT & LORD, for appellee:

It is no part of the duty of courts of review to search out errors in a record upon which to base a judgment of reversal. *Razor* v. *Razor,* 142 Ill. 378.

Canceling a deed will not divest property which has once vested by a transmutation of possession. *Hatch* v. *Hatch,* 9 Mass. 307.

The rule that a sealed instrument cannot be varied or canceled by parol applies to a lease for a term of years. *Railroad Co.* v. *Railroad Co.* 137 Ill. 30, and cases cited.

Mr. JUSTICE WILKIN delivered the opinion of the court:

On April 28, 1888, appellee leased to appellant certain premises, Nos. 66 and 68 Adams street, Chicago, for the year beginning May 1, 1888, and ending April 30, 1889, at $4800,—$1133.37 to be paid at the signing of the lease, and the balance in installments of $333.33, on the first of June following and on the first day of each succeeding month. Brewer took possession and paid the

rent to the first day of February, 1889. It is admitted appellee resumed possession April 1, and it brought this suit in the circuit court of Cook county for the installments of rent due February 1 and March 1. The defense is, that the premises were surrendered and the lease canceled on January 29, 1889. On the first trial the judgment was for the defendant, and plaintiff appealed to the Appellate Court for the First District, where the judgment of the circuit court was reversed and the cause remanded. (See 41 Ill. App. 223.) On a re-trial of the cause the verdict and judgment were for the plaintiff for $666.66 and costs of suit. The Appellate Court having affirmed that judgment and granted a certificate of importance, the defendant prosecutes this appeal.

The only question in the case going to the merits of the controversy between the parties is, whether there was such a surrender of the lease on January 29, 1889, as discharged the lessee from liability for subsequent rent under the contract.

It appears that the lease was in duplicate. One copy was held by each of the parties, the one held by appellee having the corporate seal attached, while the one held by the tenant had not. The evidence tends to show that as early as the month of December, 1888, the tenant had rented another building in the same block,—No. 78 Adams street,—to which he intended to move his business, and had placed a sign on Nos. 66 and 68, "To Let." About January 29, 1889, one Fleming was negotiating with the company for a lease of Nos. 66 and 68, and expressed his desire to have immediate possession thereof. On that day he and the secretary of the company, Joseph M. Chambers, called on Brewer for the purpose of ascertaining whether he would surrender the premises. He expressed a willingness to do so. Brewer wanted a cancellation of his lease. Chambers at first refused to make the cancellation, upon the ground that the January rent had not been paid, and also expressed a doubt as to his

authority to make the release. Chambers, the president of the company, Gage, and one of the directors named Jackson, who was chairman of the renting committee of the corporation, and Brewer, met together, and, as Chambers testifies, upon Brewer giving his check for the January rent there was written across the face of the copy of the lease held by Brewer, the words "canceled January 29, 1889," signed, "National Union Building Association.—F. M. Gage, president; J. M. Chambers, Sec'y," which endorsement appears upon the copy offered in evidence. He also testified that at the same time Jackson said to Gage, "You have no authority to cancel that lease," to which Gage replied: "No, I don't think I have; but under the circumstances, for the purpose of helping Mr. Brewer and Mr. Fleming in this case, why, we will cancel this copy and hold the original, which is in the possession of Mr. Chambers." He says Brewer was present at that conversation. Fleming did not enter into a lease for the premises at that time, but placed in the hands of Chambers, for the company, the sum of $200 as a forfeit, and agreed to return in a few days and sign the lease, but this he failed to do, and was neither seen nor heard of after the transactions of the 29th of January. Shortly after the endorsement was made upon the copy of the lease, Fleming and Brewer made an agreement that for each day that Brewer should remain in possession of the premises after the first day of February he should pay Fleming ten dollars. On the 9th of February, 1889, the corporation, in pursuance of a resolution passed by its board of directors on the 8th, notified Brewer that it would hold him to the terms of his lease until May 1, and "would not recognize any pretended cancellation of the same." Brewer, it is admitted, was at that time in possession of the premises, and there is no testimony tending to show that he made any response whatever to that notice. On the 18th of February he removed the last of his property from the building to

No. 78, and on that day offered to return the keys to the secretary, Chambers, who refused to accept them. He had also offered them to the president, Gage, on February 14, but he refused to receive them. During the month of March the company sent plumbers into the building for the purpose of repairing water pipes, at which time the keys were obtained from Brewer, but returned to him after the work was done. A few days prior to the first of April the keys were again obtained from Brewer for the purpose of cleaning up or making some repairs on the premises, and on April 1 they were taken possession of by the company.

The question here is whether or not there was a surrender of the lease on the 29th of January, 1889, by the mutual agreement of the parties. "A surrender is the yielding up of an estate for life or years to him that has the immediate reversion or remainder, wherein the particular estate becomes extinct by a mutual agreement between the parties. It is either in express words, by which the lessee manifests his intention to yield up his interest in the premises to the lessor, or by operation of law, when the parties, without any express surrender, do some act which implies that they have both agreed to the surrender as made." (2 Taylor on Landlord and Tenant, sec. 507, p. 94.) "The erasure or cancellation of the deed will not divest the estate, nor will the tearing off the names of the parties or of the seals, or the entire destruction of the instrument by mutual consent, operate as a surrender, because a deed is not of the essence of the contract, but only evidence of it, and therefore the destruction of the lease or contract would not follow upon the destruction of the deed." (Id. sec. 511; *Hatch* v. *Hatch*, 9 Mass. 307; *Smith* v. *McGowan*, 3 Barb, 404, cited in 41 Ill. App. 225.) The endorsement upon the copy of the lease held by the tenant did not, therefore, as a matter of law, discharge him from liability for rent, and whether or not that endorsement, taken in connection

166—15

with the conduct of the parties subsequently to its being made, amounted to a surrender, became a question of fact, to be determined by the jury under proper instructions from the court.

The uncontradicted evidence in the record affirmatively shows that nothing whatever was done by the parties in pursuance of the transactions of January 29. Possession of the premises was not delivered to Fleming, but the tenant, Brewer, continued to retain it the same as before. He paid no money to Fleming in pursuance of his contract to do so, nor had Fleming any legal right to demand such payment of him, having himself failed to execute a lease with the company. It nowhere appears that Brewer was induced to hasten his removal on account of these transactions, and, as we have already said, he made no objection to the repudiation of the cancellation when notified thereof. It does not even appear that in offering to return the keys to the company he claimed the right to do so by reason of the surrender of the lease. It is difficult to see, under this state of facts, upon what theory of law the jury could have returned a different verdict from that which they found.' Certainly the evidence tended to prove the lease was not treated as surrendered, notwithstanding the negotiations of January 29, and the jury having found that fact in favor of the plaintiff, and the Appellate Court having affirmed the judgment of the circuit court, it must be treated as conclusively settled adversely to the defendant.

Two instructions given on behalf of the plaintiff were in substantial conformity to the law of the case as herein stated. Several instructions were asked by the defendant which were refused, and this, it is said, was error. It seems that the only presentation of this question to the Appellate Court was the suggestion that the trial court erred in refusing those instructions, without in any way attempting to point out or specify wherein such error was committed, and it is said the Appellate Court

refused to consider the point.   Conceding this to be so, there was no error.   Counsel have no right, by such a general objection, to expect a court of review to hunt up reasons for sustaining it.   A casual reading of these instructions, however, is sufficient to justify the conclusion that they did not correctly state the law applicable to the case, and were properly refused.   Every one of them proceeds upon the theory that what was done on the 29th day of January amounted, in law, to a surrender of the lease, and concludes with the direction that if the jury find, from the evidence, that such transactions took place then they must find for the defendant.   In other words, they each leave out of consideration the important and material question as to whether or not anything was subsequently done by the parties in pursuance of those negotiations.

In what we have said we attach no importance to the question as to whether the president and secretary were authorized to make the cancellation, or whether the rule that a sealed instrument cannot be varied by parol or a writing not under seal was in any way violated.   Nor have we considered the fact that Fleming paid the $200 to the company as a forfeit as in any way affecting the rights of the parties in this litigation.

Near the close of the examination of Chambers, called on behalf of the defendant, the court inquired of counsel, "Why don't you put Mr. Brewer on the stand?" and was answered: "He is not here.   He is sick, and cannot be here.   He has been here every day in attendance at this trial until to-day.   I had supposed he would be here." Shortly thereafter an adjournment was taken for the noon hour, until 1:45 P. M.   Upon convening at that hour Brewer was present but his counsel was not.   The court directed Brewer to take the stand, and inquired, "Did you see your counsel?" and was answered, "Yes; he told me to be up here at a quarter of two; he is coming right here."   After waiting for some minutes counsel for the

plaintiff was directed to proceed to the jury, and it is claimed that Brewer thereupon inquired of the court if he would be permitted to testify, and that the court answered, "No; your attorney is not here, and we cannot wait any longer," and thereupon the evidence was closed. Upon the motion for a new trial the affidavit of Brewer was filed setting up facts which he would have testified to had he been permitted to do so, and it is insisted that the court erred both in refusing to allow him to testify upon the trial and in overruling the motion for a new trial. His counsel also filed an affidavit in support of a motion for a new trial, which wholly fails to show such diligence upon his part and that of his client as entitled him, as a matter of right, to the indulgence of the court.

The conduct of trials as to permitting delay must necessarily be left to the sound legal discretion of trial courts, and it is not for us to say that there was an abuse of that discretion in refusing to wait the convenience of counsel to attend upon the sessions of the court. It is true, fifteen minutes is not a great period of time, and yet it may often be of very much importance to the court in the dispatch of business. Moreover, we do not regard the testimony which the defendant stated in his affidavit he would have given upon the trial if permitted to testify, of that conclusive character which is always necessary in order to justify the setting aside of a verdict for the purpose of letting it in. In fact, if that testimony had been given there would still have been an absence of proof of such conduct on behalf of the defendant in pursuance of the alleged surrender of the lease as would have justified the jury in returning a different verdict.

On the whole record, the judgment of the Appellate Court should be affirmed.                *Judgment affirmed.*