## GAPPMAYER et al. v. WILKENSON et al.

No. 3253.   Decided Dec. 10, 1918.   On Petition for Rehearing, Jan. 9, 1919.   (177 Pac. 763.)

1. DEEDS—DELIVERY—TIME OF TAKING EFFECT.  Where grantor delivers a deed to a third person absolutely as his deed without reservation, and without intending to reserve any control over the instrument, to be delivered at his death, the deed takes effect on delivery to the third person, and the grantor cannot revest himself with title by repossession or destruction of the deed.[1]  (Page 240.)

2. DEEDS—DELIVERY — RESERVATION BY GRANTOR — "SURRENDERED."  The words in an escrow agreement, "or this may be surrendered at any time at request of signer," held not to mean that the grantor could recall the deed at his pleasure, but that he could have it delivered to the grantee at any time.  (Page 240.)

3. INFANTS—ESTOPPEL—PROPERTY.  Minors cannot be estopped from asserting rights to land by remaining quiet while another deals with the land in which they are interested.  (Page 240.)

4. VENDOR AND PURCHASER—UNRECORDED DEEDS—NOTICE.  One taking a conveyance of land, knowing that third parties had some interest in the premises, took subject to any equities or interests that

---

[1] *Wilson* v. *Wilson*, 32 Utah, 176, 89 Pac. 643.

the third parties may have had, even though their rights were evidenced by unrecorded deeds in escrow, under Comp. Laws 1907, section 2001. (Page 245.)

5. CANCELLATION OF INSTRUMENTS—RETURN OF PROPERTY—NECESSITY.
In action to set aside exchange of land, defendants having transferred personal property in addition to land, plaintiff should not be denied recovery by mere fact that the personal property could not be restored. (Page 245.)

Appeal from the District Court of Utah County, Fourth District; *Hon. A. B. Morgan,* Judge.

Action by Lewis B. Gappmayer and others, by their guardian ad litem, Julies Anderson, and another, against Walter Wilkenson and others.

Judgment for defendants. Plaintiffs appeal.

REMANDED with directions.

*Lewis Larson* for appellants.

*Evans, Folland & Evans* for respondents.

GIDEON, J.

Lewis B. Gappmayer and four other infants, by their guardian ad litem, Julies Anderson, and Anna la Priel Gappmayer bring this action against the defendants Walter Wilkenson and Hattie Wilkenson, to have declared null and void and of no effect a conveyance made by the defendant William R. Nelson of certain real property located in Utah County to said defendants Wilkenson, and that the title to the same be revested in these plaintiffs; and plaintiffs also ask that the title to the premises conveyed by the defendants Wilkenson to their codefendant Nelson, and by said Nelson conveyed to these plaintiffs, be restored to, and be decreed to be the property of, the said Walter Wilkenson and Hattie Wilkenson.

The defendants Wilkenson by their answer deny the right of the plaintiffs to the relief demanded, and allege, as an

affirmative defense, that they purchased the property claimed by the plaintiffs from said William R. Nelson in good faith and for a valuable consideration, and without any knowledge that the property was claimed by the plaintiffs or any of them, and that after said purchase plaintiffs went into possession of the property conveyed to them, and the defendants Wilkenson into the possession of the property conveyed to them, and that each party has ever since remained in the possession of their respective properties.

The facts out of which this litigation grew are substantially as follows:

In the year 1912 the mother of plaintiffs died at Provo, Utah. Their father, Bartl Gappmayer, resided with his minor children for something like two years after the death of his wife, at which time he concluded to remarry. Prior to his remarriage it seems it was his desire to make provision for his minor children by deeding to them the land in question in this action. Pursuant to that desire the father, on or about the 7th day of April, 1914, executed three deeds in favor of such children, two of which were introduced in evidence as Exhibits 1 and 2. The third deed had been lost. At the same time, in order to equitably distribute the property among his children, he executed certain mortgages on the property in question in favor of his remaining children, and such deeds and mortgages were on said date placed in an envelope and deposited with the Utah County Abstract Company of Provo, Utah, with directions to deliver such deeds to the grantees upon the death of the grantor, said Bartl Gappmayer. It also appears that an uncle of the plaintiffs, the defendant William R. Nelson, held a mortgage lien against the property so conveyed, and that on or about the 19th day of July, 1915, after the remarriage of Gappmayer, that mortgage was renewed. Subsequently, to-wit, about the 24th day of August, 1915, an arrangement was made between the father and the uncle, defendant Nelson, by which it was agreed that the mortgage to Mr. Nelson should be paid by a conveyance of this same property to him, and that deed was executed by Gappmayer and wife, and on the same date placed in an envelope and deposited with the same Utah County Abstract Company, with directions that in the event

Nelson should desire to sell certain lands mentioned in the escrow agreement he should retain the sum of $2,000, the amount of his mortgage, and pay the remainder to the plaintiffs. It also appears that the defendant Nelson was a bachelor, a brother of Gappmayer's deceased wife, a man of 65 years of age, and he testified that it was his wish that whatever interest he had in the premises in question should at his death go to the plaintiffs. It was further agreed between the father and the uncle at the same time, to-wit, August 24, 1915, that in consideration of the conveyance by the father, Gappmayer, to the uncle, that he, the uncle, should execute deeds conveying to the plaintiff children the same premises that the father had conveyed in the prior deeds executed by him in April, 1914. Accordingly, deeds were made and executed by Nelson, and the same were deposited under a new escrow agreement with the Utah County Abstract Company, and there was indorsed on the envelope containing the deeds the following statement or agreement:

"This envelope contains two deeds and two certificates for water stock to be delivered to the grantees named in said deeds on satisfactory proof to the holders, Utah County Abstract Company, of the death of William R. Nelson; or this may be surrendered at any time at request of signer. Provo, Utah, August 24, 1915. W. R. Nelson."

At that time, and prior thereto, the defendant Nelson resided upon the premises in question with the minor children, plaintiffs in this action. Thereafter, in the month of September, 1915, through a real estate broker, the defendant Walter Wilkenson induced the defendant Nelson to exchange the property conveyed by him to the minor children for certain real property located in Sanpete County, this state. Prior to this exchange of property, and in contemplation of the same, the Utah Abstract Company, with the consent of Nelson, and with the knowledge of the father, Bartl Gappmayer, had the deed which conveyed the property to Nelson from Gappmayer recorded, and thereafter Nelson by deed conveyed the same to the defendants Wilkenson. The property received in exchange, located in Sanpete County, was conveyed by Wilkenson and wife direct to Nelson and immediately thereafter deeds were executed by Nelson conveying such property to

the plaintiffs. The deeds conveying the Sanpete County property to plaintiffs were left with the Utah County Abstract Company, and placed in the same envelope from which the deeds executed by Nelson, conveying the Utah County property to the plaintiffs, had been taken. The former deeds apparently were destroyed some time after this transaction.

The trial court entered judgment dismissing the action, and made findings of fact, among which are that the defendant Nelson did not intend the deeds executed by him and left with the abstract company to be a present or absolute conveyance, and that the defendants Wilkenson were bona fide purchasers without notice for a valuable consideration.

Plaintiff's appeal, and attack both the findings and the conclusions of the court, and insist that the findings are not only contrary to the weight of the testimony, but are in conflict with the written escrow agreement under which the deeds were delivered to the abstract company at the date of the execution of the deeds both by the father in April, 1914, and by their uncle, Nelson, August 24, 1915; also that the weight of the testimony shows conclusively that the defendants Wilkenson knew of the deeds so executed to the children, and were not therefore innocent purchasers, and as a matter of fact took the exchange with knowledge that defendant Nelson did not have title to the premises so conveyed.

It has been determined by this court that "where a grantor delivers a deed to a third person, absolutely as his deed, without reservation, and without intending to reserve any control over the instrument, though it is not     1, 2, to be delivered to the grantee until the grantor's death,      3 the deed, when delivered, is valid and takes effect from the first delivery"; also that if, after such delivery, the deeds are repossessed by the grantor or destroyed, the grantor does not thereby revest himself with title. *Wilson* v. *Wilson,* 32 Utah, 176, 177, 89 Pac. 643.

It is the contention of the appellants that by the deeds executed by the father, Bartl Gappmayer, in April, 1914, which were delivered to the abstract company to be again delivered to the grantees after the grantor's death, he, the father, divested himself of any title in the premises, and that the con-

veyances made thereafter by him were a nullity, and did not convey any title to Nelson, who knew of the former conveyances made by the father. The escrow agreement executed of that date had been lost, and its contents were proved by the witness Julies Anderson, the manager of the abstract company. However, it is further contended that, whatever may have been the effect of the conveyances made by the father, the subsequent conveyances made by Nelson on August 24, 1915, of the same premises to the same parties (the plaintiffs), conveyed whatever title, if any, Gappmayer still retained in the premises; and that such deeds executed by Nelson as grantor, and wherein the plaintiffs were named as grantees, and which were deposited with the abstract company, left no title either in Nelson or Gappmayer, except a life estate in Nelson, and that the written instrument or agreement made on the envelope and executed by Nelson conclusively establishes that contention. It will be remembered that on that date, August 24th, Gappmayer and wife had conveyed the same premises to Nelson by warranty deed. On the other hand, it is the contention of the respondents that depositing the deeds with the abstract company did not deprive the grantor, Nelson, of the right to recall or repossess the deeds at any time during his lifetime that he might elect; that the provision of the escrow agreement, "or this may be surrendered at any time at request of signer," was intended to mean, and does mean, that the grantor could recall the deeds at his pleasure. On the part of the appellants it is contended that the word "surrender" is not susceptible of any such construction or meaning, and, on the contrary, was intended to mean, and does mean, that the deeds may be surrendered to the grantees at any time upon the request of. the grantor, Nelson. It will thus be seen that the determination of the meaning of that escrow depends materially upon the construction to be placed on the word "surrender" as contained therein.

The Century dictionary defines "surrender" as follows:

"To yield or resign in favor of another; cease to hold or claim; relinquish; resign; as, to surrender a privilege; to surrender an office."

''A surrender is the yielding up of an estate for life or years to him that hath the immediate estate in reversion or remainder, wherein the estate for life or years may drown by mutual agreement. *Springstein* v. *Schermerhorn,* 12 Johns. (N. Y.) 357, 361; *Schieffelin* v. *Carpenter,* 15 Wend. (N. Y.) 400, 404; *Brewer* v. *National Union Bldg. Ass'n,* 46 N. E. 752, 753, 166 Ill. 221; *Hays* v. *Goldman,* 72 S. W. 563, 564, 71 Ark. 251.'' 8 Words & Phrases, 6820.

There is nothing in the context of that escrow of the acts of the parties at the time of its execution to indicate that the words used therein were not understood and should not be given their ordinary meaning in attempting to construe or arrive at what was intended by the parties at the date of its execution. It is apparent all through the record that it was the desire and intention of both the father and the uncle that at the death of the uncle and of the father the plaintiffs, the children of the deceased sister of Nelson, should have and enjoy the premises conveyed by them. Apparently no other consideration induced the arrangement to be made, and it was consummated on this date, to-wit, the 24th day of August, 1915, when this escrow agreement was finally executed and the papers delivered to the abstract company. It is true that the subsequent acts of the defendant Nelson are not consistent with this construction, but it is apparent that that was the intent of the parties at that time, and any act or transaction afterwards was a subsequent thought. As determined by this court in the case of *Wilson* v. *Wilson,* supra, the rights of the plaintiffs became fixed by the acts of the parties at this date, and the defendant Nelson could not revest himself of any interest or title in the property, by his subsequent acts. There is no contention that there was any one connected with these subsequent negotiations with the defendants who was authorized to act for or bind the plaintiffs. The plaintiffs, being minors, cannot be held to be estopped from now asserting any right they had.

It is further contended on the part of the respondents that they are innocent purchasers for value and without notice of any adverse claims, and that any unrecorded deed is void as to them, under the provisions of our statute (Comp. Laws 1907, section 2001), wherein it is provided that every convey-

ance of real estate within this state which shall not be recorded shall be void as against innocent purchasers in good faith and for a valuable consideration.

.It is not necessary in this case, as we view the record, to determine what the effect of that section might be upon the interests of the plaintiffs, as we are convinced that not only the weight of the testimony is against the finding of the court that the Wilkensons were purchasers in good faith without notice, but that the record almost conclusively shows that they knew or had such notice of the interests of the plaintiffs as would put any reasonable person upon inquiry to ascertain what that interest was. The witness Bartl Gappmayer, father of the plaintiffs, testified that upon his first meeting with the defendant Walter Wilkenson he told him his children were interested in the premises to the extent of $3,600; that he had conveyed the premises to Mr. Nelson, and that he (Nelson) took that interest for his children. Further on in his testimony the same witness stated that while at the home of the defendants Wilkenson in Sanpete County, not only in the presence of both of the Wilkensons, but in the presence of others, he told them that he was there to look over the property and to represent the children, referring to the plaintiffs. Further on the same witness testified that at a subsequent date, in the town of Provo, after the terms of the exchange had been verbally agreed upon, but prior to the execution or delivery of the deeds, he called the defendant Walter Wilkenson into the office of the abstract company to consult with him regarding the division of the Sanpete property among his children. Another witness, Smart, who was entirely disinterested, being the real estate agent or broker who brought the parties together, testified that he was present at the home of the Wilkensons in Sanpete County at the date testified to by Gappmayer; that he (Gappmayer) said in effect that he was down there in behalf of the children. This witness further stated: "It kind of surprised me when he made that statement; then afterwards I had my opinion of it." The defendant Nelson also testified that at the first meeting between himself and the defendant Walter Wilkenson he explained to him that this property had been deeded to the

children, and that he had "no right to sell it only as Gapp-mayer would give his consent"; also that the deeds made out by him to the children were "with Julies Anderson." It ap-pears that Julies Anderson was the manager of the Utah County Abstract Company. The same witness also testified that Walter Wilkenson asked him how it was that this prop-erty had been deeded to the children, and that he explained to him, to the best of his recollection, that he had a mort-gage on the place, and that in order to release the mortgage the property was deeded to him, with the understanding that he would deed it back to the children, and that he had so deeded it over to the children; that he told him that at the home on Provo Beach, where the land is situated. He further testified that Walter Wilkenson inquired if these deeds had been recorded, and was advised that they had not been, but had simply been placed in escrow, and while he (the wit-ness) believed the property might be traded it could not be done without the consent of Gappmayer. The conversation testified to by the witness Nelson as having taken place be-tween him and the defendant Walter Wilkenson at the prop-erty is corroborated by the testimony of Lewis Gappmayer, one of the plaintiffs in this action. It is true that that con-versation is denied by the defendant Walter Wilkenson, in fact all conversations testified to respecting any statements made concerning the title are denied by him, and he affirma-tively testified that he had no knowledge or information con-cerning any interest of any one except the defendant Nelson in the title to the premises. In that he is corroborated by Hattie Wilkenson, but it conclusively appears from her tes-timony that she was advised and knew that some one other than and in addition to Nelson was interested in the premises, as she stated, in repeating a conversation had with the father, Gappmayer, at her home in Sanpete County, that she asked him this question, "How is this that we are getting this place of W. R. Nelson and this home is yours?" Then she testi-·fied, quoting from the bill of exceptions: "And he answered, he said like this: 'When I and Will'—he called him by name, I suppose that is the name he goes by—'divided up the prop-erty I deeded this home to Bill, and he said it belongs to him,

and no one else, because he is a bachelor.' '' In addition, the plaintiffs, with their uncle, were occupying the premises conveyed to the defendant Wilkenson at the date of the exchange, and Lewis B. Gappmayer, one of the minor plaintiffs, a young man then over eighteen years of age, accompanied the father, uncle, and the two real estate brokers on the visit to, and the examination of, the defendants' ranch in Sanpete County, all of which was known to the defendants.

From the foregoing it will be seen that not only the number of witnesses testifying is contrary to the finding of the court that the defendants Wilkenson were innocent purchasers without notice, but that the circumstances surrounding the entire transaction were such that the defendants Wilkenson must have had knowledge that the children, the plaintiffs in this action, being the nephews and nieces of the defendant Nelson and the children of Gappmayer, who assisted in the negotiations, had an interest in the premises, and that the defendants Wilkenson, in taking the title with that knowledge, took it subject to any equities or interests that the plaintiffs may have had in said premises.

It also appears in the record that the defendants Wilkenson, in addition to the land conveyed to their codefendant Nelson, transferred and gave certain personal property, such as livestock, farm implements, etc., and that some of the live stock has been disposed of, and possibly some of the farming implements lost or destroyed; and such defendants contend that, as that property cannot be restored to them, the court is unable to give complete relief and place the parties in statu quo. It further appears from the testimony, however, that the defendants have been in possession of the premises of the plaintiffs, which is at least partly orchard land and is valuable, and the rental value would be considerable each year, and that they have received the benefits from such occupancy since the date of the exchange. There is nothing in the record to indicate the value of the property lost or destroyed, nor as to the actual rental value of the premises occupied by the defendants Wilkenson, or the rental value of the land occupied by plaintiffs. There should be no difficulty for the court to ascertain the value of

the personal property which the plaintiffs are unable to return to the Wilkensons or the reasonable rental value of the premises occupied by both parties.

The case will therefore be remanded to the district court, with directions to make findings of fact and conclusions of law in accordance herewith; to enter its judgment decreeing the conveyance made by Nelson to the defendants Wilkenson null and void, and to restore to the defendants Wilkenson the title to the property conveyed by them to Nelson; to take testimony respecting the value of the personal property which plaintiffs are unable to return, and also testimony as to the rental value of the premises occupied by and to do justice between the parties respecting those matters. Appellants to recover costs.

FRICK, C. J., and McCARTY, CORFMAN, and THURMAN, JJ., concur.

On Petition for Rehearing.

GIDEON, J.

Counsel for respondent have with much earnestness, in a petition for rehearing, urged upon this court (a) that this case was determined upon issues not within the pleadings; (b) that testimony was considered that was not admissible and not material in the case; (c) that no effect was given to certain material testimony and that the same was not considered; and (d) that the conclusions reached by the court are contrary to the weight of the testimony.

It is first insisted that the theory of the complaint is that the defendant Nelson received the property in question in trust for the plaintiffs, and that the decision of this court is not based upon that theory. True, it is charged in the complaint that the father of the plaintiffs, Bartl Gappmayer, conveyed the property to the defendant Nelson in trust for the benefit of his children; but it is also true that it is further alleged in the complaint that after the defendant Nelson had received the property he executed the trust by actually con-

veying the premises to the plaintiffs and depositing the deeds in escrow, and that he thereafter wrongfully and in disregard of the rights of plaintiffs conveyed the same property to the defendants (respondents). Furthermore the plaintiffs, in addition to asking for general equitable relief, pray for the specific relief given them by the judgment of this court. While reference is made in the opinion to the deeds executed by Gappmayer to his children in April, 1914, that, in no sense is the basis of the court's conclusions, and is only referred to in the opinion in giving a history of the facts out of which the controversy grew and also in stating the contention of appellant.

Counsel further complain that no consideration or weight was given to the escrow agreement made between the defendant Nelson and Gappmayer on the 24th day of August, 1915. In that escrow agreement it was provided that in case Nelson should decide during his lifetime to sell 7.90 acres of the land mentioned in the deeds he would pay to the plaintiffs all amounts over the sum of $2,000. The deeds deposited in that escrow were executed by Gappmayer and wife, as grantors, to the defendant Nelson, as grantee. Contrary to counsel's contention, the provisions of that escrow were considered, and they support and affirm the conclusion that Nelson did take the property charged with the trust in favor of the plaintiffs to the extent of the value of the property in excess of the sum of $2,000. It appears from the subsequent escrow agreement executed by Nelson himself that he executed the trust by conveying the same premises to the plaintiffs, retaining as a consideration for his interest in the property a life estate for himself; that he deposited the deeds executed by himself to the plaintiffs for that purpose under the escrow agreement mentioned in the opinion wherein he released all rights over such deeds save the right to surrender them at an earlier date than his death if he so elected. The intent and effect of that escrow agreement is discussed in the opinion, and we are satisfied with the results there reached, and no good reason appears for reviewing the same here. A reexamination of the record strengthens the conviction that the conclusions reached are clearly within the issues presented

by the pleadings, and are supported by the great weight of the testimony, and that they reflect justice between the parties. The petition for rehearing is therefore denied.

CORFMAN, C. J., and FRICK and THURMAN, JJ., concur.