# CHARLESTON.

AGNES WARREN, INFANT, ETC. et als. v. J. O. BOGGS et als.

Submitted February 14, 1922.   Decided February 21, 1922.

1.  BOUNDARIES—*Under a Compromise Agreement, Held that Land
    Should be Surveyed as of the Date of a Designated Deed
    Using Surface Measurement.*

    Where claimants to land compromise their differences by a
    writing, and the land which one of the claimants shall take
    thereunder is designated by corners, lines and distances as
    found in a deed of a certain date, recorded, and made to his
    predecessor in title; and, in locating and surveying the land,
    it appears that all of the corners have been destroyed and
    the true locations thereof disputed, except one on which the
    parties agree, the land should be surveyed as of the date of
    the designated deed, and not as of the time of the compromise
    agreement, and by the method of measurement used in the
    original survey, beginning at the undisputed corner, and if the
    deed shows on its face that the corners, lines and dis-
    tances were made by surface measurement, the same
    measurement should be used in restoring the destroyed cor-
    ners and in ascertaining the true boundaries.   The proper
    construction of the compromise agreement is that the parties
    intended that the corners and boundaries should be ascer-
    tained by the measurement set out in the original deed re-
    ferred to by them.   (p. 331).

2.  SAME—*Disputes—Course or Distance According to Manifest
    Intention of the Parties Should Control.*

    Where there is a conflict between the distance of one line
    and the course of another, either the course or the distance
    shall control, according to the manifest   intention of the
    parties.   (p. 336).

3.  SAME—*Method of Making Original Survey and Facts and Cir-
    cumstances May be Weighed in Determining Whether Dis-
    tance of One Line Should Control Courses of Another and
    Vice Versa.*

    In such case the method of making the original survey
    whether by surface or horizontal measurement, the quantity
    of land conveyed and the price paid therefor, and generally

the facts and circumstances surrounding the parties at the time of the survey and deed, may be weighed and considered in determining whether the distance of one line of the survey should control the courses of another line, or vice versa.    (p. 331).

Appeal from Circuit Court, Roane County.

Suit by Agnes Warren, Infant, and others, against J. O. Boggs and others.   Judgment for defendant, and plaintiffs appeal.

*Reversed and remanded.*

*S. P. Bell, A. G. Mathews, David Pendleton* and *Harper & Baker,* for appellants.

*V. B. Archer, C. N. Matheny* and *George F. Cunningham,* for appellees.

LIVELY, JUDGE:

This cause was formerly considered by this court ,on appeal from a decree sustaining a demurrer to, and dismissing, plaintiffs' bill.   *Warren* v. *Boggs,* 83 W. Va. 89.   A statement of the facts, as set out by the pleadings, is there found.

The respective property interests of the parties in the subject matter of the litigation have been determined in a compromise agreement entered into by them and dated May 12, 1913.   By that agreement the parties have designated the metes and bounds of the 94 acre tract, and the metes and bounds of the 17 acre and 115 poles tract, designated in the pleadings "as the 18 acre tract" which interlocks on the 94 acre tract.   The controversy is now as to the proper location, with respect to these two tracts, of an oil well known as Boggs No. 5.   If that well is on the 94 acre tract the plaintiffs are entitled to 7/8 of the 1/8 royalty therein and defendants to 1/8 of the royalty; if the situs of the well is on the 18 acre tract, then defendant is entitled to all of the royalty.   The lower court decided that the well was on the 18 acre tract; that plaintiffs were not entitled to any relief and dismissed their original, amended and supplemental bills.   This appeal was awarded from that decree.

The compromise agreement of May 12, 1913, which is the basis of this litigation and on which the contentions of the parties are predicated, recites that defendant Boggs is the owner of the 18 acre tract, "which was conveyed by C. C. Smith and wife and A. B. Wells and wife to N. B. Hoff, by deed dated March 1, 1886, of record in the Roane County Court Clerk's Office in Deed Book No. 12 at page 64, which is therein bounded and described as follows: BEGINNING at a stake and pointers Hiram Nestor's north-west corner, thence N. 2 E. 16 1/2 poles  to a stone pile and pointers, thence S. 87 1/2 E. 180 poles to pointers on line of No. 9 and 10; thence S. 2 W. 15 poles to a white oak, corner to said Nestor; thence N. 87 1/2 W. |with Nestor line 180 poles to the beginning, which said tract of 18 acres of land is claimed by the said J. P. Boggs to lap or interlock on the said tract of 94 acres." The deed from Smith and Wells to Hoff is exhibited, and the same courses and distances are found therein as above given, with the addition thereto, after the last course and distance (N. 87 1/2 W. with the Nestor line 180 poles to the beginning) the words "Surface measurement containing seventeen acres and one hundred and fifteen poles." The consideration named is $106.30. In 1892 Hoff executed a trust deed on this land to J. A. A. Vandale, trustee, to secure a debt owing to H. W. Goff, in which the same corners, courses and distances are given, and the acreage stated to be 18 acres more or less. And, on July 29, 1907, Vandale, trustee, executed the trust and deeded the land to J. O. Boggs for $160.00, in which the same courses, distances and corners are given, "being the same tract of land conveyed to the said N. B. Hoff by C. C. Smith and A. B. Wells by deed bearing date on the 1st day of March, 1886, and recorded" etc. In the two last named deeds no reference is made to surface measurement. The boundaries of the 94 acre tract are incorporated in the compromise agreement, but they have little bearing upon the question at issue, the location of the well, as the entire 18 acre tract seems to be an inter-lock upon and lying within the boundaries of the 94 acre tract. The location and establishment of the northern line

of the 18 acre tract running from the stone pile and pointers
"S. 87 1/2 E. 180 poles to pointers on a line of No. 9 and
10" decides the issue. If this line runs south of the well
then plaintiffs are entitled to relief, as the situs of the well
would be on the 94 acre tract; conversely, if the true loca-
tion of the line is north of the well then the well is on the
18 acre tract and the decree should be affirmed. Twelve
surveyors, six on each side, went upon the land and surveyed
the 18 acre tract, and those introduced as witnesses for
plaintiffs, Thorn, Taylor, Shoup, Bell, Childs and Parks,
place the northern line of the 18 acre tract from 4 to 13
feet south of the well; and those employed by defendant,
Wolf, Woodyard, Dunbar, Scott, Ewing and Daniels, place
the line from 4.6 to 11 feet north of the well. On this con-
flicting evidence we are called upon to ascertain the location
of the lines, especially the northern line of the 18 acre
interlock. These surveyors have had many years of prac-
tical experience in their profession and seem to be well
versed both in theory and practice. How can it be that in
the ascertainment of one line of so small an area, bounded
by four lines only, a difference of from 8 to 24 feet arises?
The science of geometry and mathematics is exact. The
infinite depths of stellar space are measured with such exact
nicety that the apposition of stars and planets can be cal-
culated to the fraction of a second of time. One corner of
the survey, the southeastern corner, the white oak stump
replaced by an iron pipe, is agreed upon as the only corner
about the location of which there is no controversy. From
this point the surveyors began, and from that point the
three remaining corners are differently located by them.
It is evident that the methods pursued, and not a defective
science, have brought about the different results, different
maps. By what method should the surveys have been made?
Plaintiffs insist that the surveys should be made according
to the courses, lines, distances and corners denoted as of
the date of the compromise agreement of May 12, 1913,
allowing for the magnetic variation from that date; or if
the survey be made as of the date of the original survey
in 1886, and the magnetic variation calculated from that

date, then surface measurement should be invoked, the method of measurement then used, as expressly stated in the original deed from Smith and Wells to Hoff. Defendant asserts that the survey should now be made with magnetic variation calculated from 1886, and by horizontal measurement, under sec. 2, chap. 67, Code. It appears that all of the surveyors calculated the magnetic variation from 1886, each using practically the same degree of variation when running the lines. If the survey is to be made as of that date, and we think it proper to do so, the same measurement should be used as was then used—surface measurement. In that way only could the footsteps of the original surveyors be followed. In that way only can the boundaries be determined and fixed as they were then ascertained and fixed. Any other method will bring about a different result. That is fully demonstrated, for, by using horizontal measurement, the side lines have been shortened about 6 poles and the eastern line lengthened by 1 1/2 poles. These surveyors should, as nearly as possible, do exactly what the surveyor then did. Was it the intention of the parties, when they made the compromise agreement in 1913, that the 18 acre tract should be run out and located by the survey and deed as of 1886? Such seems to be the contention of defendant for his surveyors have calculated and used the magnetic variation from that date. It follows that the surface measurement as set out in that deed must also be adopted. The beneficial portions of that deed cannot be taken by either party and the portions which are not beneficial ignored. The agreement refers specifically to the deed of 1886, and the courses, distances and corners are copied "as therein bounded and described." Horizontal measurement should govern unless surface measurement is concontracted for. Smith and Wells contracted for surface measurement with Hoff, and the parties here have contracted for the location of the land just as the original deed stipulated, by specific reference thereto. "A deed, for a description of the land, may refer to another deed or map, and the deed or map is considered as incorporated in the deed itself for description of the land." *Blowpipe* v.

*Spencer,* 46 W. Va. 590. The parties, by referring to the deed of 1886 as the basis for the location of the land, are bound by all of its provisions with reference thereto. Surface measurement of the southern line running from the white oak stump westwardly 180 poles to the northwest corner of Nester (the beginning corner of the deed of 1886) is practically the same as horizontal measurement; and the same is true of the western line running from the northwest corner of Nester N. to the stone pile and pointers 16 1/2 poles. But the northern line is over rough, hilly land, and horizontal measurement of this line reaches the line of No. 9 and 10 at 174.43 poles to 175.4 poles instead of 180 poles as called for in the deed. Again, the distance from the point thus located by them on the line of lots 9 and 10 as the northeast corner of the 18 acre tract was found to be 16 1/2 poles horizontal measurement, from the white oak at the southeastern corner, the beginning point of their surveys, instead of 15 poles as called for in the deed. It is argued that this being the closing line, and the north and south side lines being parallel, the distance must give way, and 1 1/2 rods added thereto in order to close the survey and make the eastern line equal to the western line. At the time of making the survey and deed in 1886 it appears that Smith and Wells had no title to the land, but arbitrarily went upon the Warren land (now the 94 acre tract), made the survey and conveyed the 17 acres and 115 poles to Hoff for the sum of $106.30, exactly $6.00 per acre. Smith was the surveyor, with Wells and Samuel Evilsizer as chain carriers. The surveying was begun by them at the northwest corner, thence on a bearing S. 87 1/2 E. 180 poles to a hickory, but for some reason they did not care to go that far north on the line of lots 9 and 10, and either Smith or Wells went up the hill, further south, and located the northeast corner, and from there southwest 15 poles to the white oak corner. Then the western and southern lines were run. The eastern 15 poles line was not the closing line of their survey, neither is it the closing line in the deed made by them. There is no more substantial reason why the eastern line should be lengthened so as to

correspond with the length of the western line, than that the western line should be shortened to be the same length as the eastern line. In the first instance the acreage will exceed 18 acres (more than that conveyed in the deed); and, in the latter instance, the acreage would be less than that conveyed in the deed. It will be observed that the quantity of land conveyed in the deed is exact, 17 acres and 115 poles, not "more or less." It will also be observed that the purchase price, $106.30, is exactly $6.00 per acre. These are pertinent and significant facts and are peculiarly indicative of the intentions of the then contracting parties. Did they not intend to convey a tract of land 180 poles long by 16 1/2 poles wide at one end and 15 poles wide at the other end, when we find that these produce the exact acreage conveyed at an exact figure per acre? Why then should these lines be lengthened or shortened, thus making a conveyance of a greater or less quantity of land than that intended to be and actually conveyed? It is especially to be noted in this connection that after the northern 180 pole line was run on a bearing of S. 87 1-2 the vendors deliberately moved the corner thus ascertained as the northeast corner on a line of lots 9 and 10, further south and a distance of 15 poles surface measurement from the white oak, and made their deed accordingly. Under these facts should not the bearing of the northern line give way to the distance of the eastern line thus deliberately located? "It is proper to consider a correspondence of quantity given by a line with the quantity mentioned in the deed or in the approximation to such quantity as tending to establish the truth of such line." 2 Devlin on Deeds, sec. 1045. See also *Goff* v. *Goff,* 78 W. Va. 423; *Croghan* v. *Nelson,* 3 Howard (U. S.) 187. "There is no uniform rule that the length of one line, as mentioned in a deed, shall control the course of another line, or that the latter shall control the former. Other circumstances will determine the adoption of the one or the other." *Western M. & M. Co.* v. *Peytona C. C. Co.,* 8 W. Va. 406 (syl. 4). "Where the description of land by monuments, distances or otherwise is vague and indefinite, by reason of conflicting lines or omis-

sions of a line, or from other cause, the statement of the acreage is an essential part of the description." *Smith* v. *Owens,* 63 W. Va. 60 (pt. 6 syl.), 59 S. E. 762; *State* v. *Hicks,* 76 W. Va. 508. According to Ewing, one of defendants' surveyors, if the eastern line be extended to 16 1-2 rods level measurement, so as to make it correspond in length with the western line it would make the deed convey 18 acres and 90 poles by level measurement. How much more it would include by surface measurement does not appear. "Where there is a conflict between the distance of one line and the course of another, either the course or the distance shall control, according to the manifest intention of the parties and the circumstances of the case." *Ruffner* v. *Hall,* 31 W. Va. 428. See also *Smith* v. *Chapman,* 10 Gratt 445. It appears to be conceded by all of the surveyors that if the courses and distances are run by surface measurement with proper magnetic variation from 1886 that the well is not on the 18 acre tract even if the eastern line be extended to 16 1/2 poles. Surveyor F. F. Daniel testified that if a line were run from the northwest corner of the 18 acre tract as fixed by Mr. Ewing (another witness for defendant) to the end of the 16 1/2 rod surface measure line from the white oak (S. E. corner) towards the gum sapling (the N. E. corner fixed by defendants' surveyors) the well would be north of the line about 1 14/100 feet; and if the eastern line were measured 15 poles horizontal measurement from the white oak towards the gum sapling and the northern line extended from the end of the 15 poles so measured westward to the northwest corner then the well would be north of the last mentioned line about 1 1/2 rods, and on the 94 acre tract. G. C. Ewing testifies to practically the same. J. V. Dunbar, a witness for defendants, states that the only way the well can be located on 18 acre tract is to lengthen the eastern boundary line running north from the white oak from 15 poles as called for in the deed to 16 1/2 poles and change it from surface to level measurement. The surveyors agree that if the eastern line is measured from the white oak a distance of 15 rods either by surface or

horizontal measurement and the northern line extended therefrom to the northwest corner, giving proper variation from 1886, the well would be north of the northern line, or outside of the 18 acre tract known as the interlock.

Having concluded that the survey of the 18 acre tract should be made by surface measurement, the method by which Smith and Wells made their original survey in 1886 as shown by their deed to Hoff, and it appearing that such measurement will place the situs of the well without the interlock and on the 94 acre or Warren tract, it follows that the decree must be reversed. All of the defendants' surveyors ran out the lines and distances by horizontal measurement, giving proper magnetic variation from 1886 and extended the eastern line 16 1/2 poles by which method it was found that the well was within the 18 acre tract from 4.6 feet to 9.2 feet. Lawson Scott, by this method placed the well a little over 11 feet south of the northern line of the tract. It is argued that horizontal measurement should control inasmuch as nothing is said in the compromise agreement about how it should be measured, and hence the statute reads into the agreement horizozntal measurement. It is argued that the reference to the deed of 1886 is a mere recital under a "whereas" clause; and yet when defendant surveys the land the deed of 1886 is invoked and the survey made as of that date; that is, the magnetic variation is calculated from that date. If the reference to the deed of 1886 be a mere recital and of no effect as evidencing the intentions of the parties, then the land should have been located under the calls and distances of the agreement of 1913, and the magnetic variation calculated from that date. It is conceded by the surveyors that unless the variation is calculated from 1886 and used in the survey, the well will lie north of the 18 acre tract. It seems that a survey of that tract, if it had been made as of the time of the agreement, and with horizontal measurement, would place the well without the 18 acre tract. As before stated, defendants cannot invoke the benefit of the recital under the "whereas" clause in the agreement and ignore that which

is not beneficial therein. The true test is a survey of the land in the manner in which it was originally surveyed. We so construe the compromise agreement of 1913.

In view of our disposition of this cause largely upon the evidence of defendants' surveyors, in which it is shown that by surface measurement the well will be located on the 94 acre tract, we do not deem it necessary to pass upon plaintiffs' exceptions to certain portions of defendants' depositions. The decree will be reversed, and the cause remanded for further proceedings in conformity herewith.

*Reversed and remanded.*