KUHN et al. v. CHESAPEAKE & O. RY. CO.
No. 4720.

Circuit Court of Appeals, Fourth Circuit.
March 10, 1941.

Alfred D. Preston, of Beckley, W. Va.,
for appellants.

C. W. Strickling, of Huntington, W. Va. (Tom T. Baker, and Fitzpatrick, Brown & Davis, all of Huntington, W. Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiff in an action of ejectment. The land in controversy consists of about 9 acres lying on Big Coal River in West Virginia and formerly constituting a small island between two branches of that river. It was part of a larger tract of land which formerly belonged to one Andrew Jarrell and which was divided in the year 1891, the portion on the left of the river, going down, being conveyed to the predecessor in title of plaintiff and the portion on the right to the predecessors in title of defendants. In the course of a flood in the year 1916 the right branch of the river was filled with earth and debris and little if any water has flowed in it since. Plaintiff contends that the dividing line followed this branch of the river and that plaintiff therefore owns the land in controversy. Defendants contend that the line followed the left branch of the river, and that the land in controversy accordingly belongs to them. They rely also on adverse possession. The court below submitted the case to the jury on both questions thus presented; and from verdict for plaintiff, the defendants have appealed.

Four questions are presented by the appeal: (1) whether verdict should have been directed for defendants; (2) whether the court erred in instructing the jury that the location of the division line depended on which was the main channel of the river in 1891; (3) whether the court erred in instructing the jury that they should disregard evidence as to adverse possession prior to a deed executed to Pearl Carter in 1926 and in excluding evidence of adverse possession prior thereto; and (4) whether the court erred in instructing the jury that a deed from L. B. Kuhn and D. M. Holstein to the defendant Pearlie Kuhn in 1927 was fraudulent.

The Motion for Directed Verdict.

As heretofore stated, the land in controversy was part of a large tract originally belonging to one Andrew Jarrell. In 1891, he conveyed the portion of the tract lying to the right of the river and containing 122 acres to Nancy M. Kuhn, mother of the defendant P. H. Kuhn, and on the same day conveyed the portion lying to the left to Cochran and Hull, the river forming the boundary between the tracts so conveyed, and the tract of Cochran and Hull, under whom plaintiff claims, being described as beginning "where said Nancy M. Kuhn's line strikes the river on the north-east side thereof". The branching of the river which is the principal basis of this controversy occurs near this point. The closing of the right branch of the river in 1916 left the island embracing the land here in controversy on the Kuhn side of the only remaining branch; and one of defendants' contentions on their motion for directed verdict is that the last deed under which plaintiff claims, which was executed in 1923 and which calls for the river as a boundary, must be construed with reference to the course of the river as of that date, and that, when so construed, it does not cover the land in controversy. They contend also that both this deed and the deed of Jarrell to Cochran and Hull are void for indefiniteness of description, if reference be not made to the maps to which they refer, and that reference may not be made to the maps because they were not attached to or recorded with the deeds.

We think that these contentions are wholly without merit. When reference is made to the maps referred to in the deeds, the description is sufficiently specific; and the rule is well settled in West Virginia, as it is elsewhere, that "a deed, for a description of the land, may refer to another deed or map, and the deed or map is considered as incorporated in the deed itself for description of the land." United States Blowpipe Co. v. Spencer, 46 W.Va. 590, 33 S.E. 342; Warren v. Boggs, 90 W. Va. 329, 111 S.E. 331. The call for the river in the deed executed in 1923 must be construed with the other calls, which show that the intent was to convey to the river constituting the line of the property of the Kuhn heirs. There is consequently nothing in the contention that the deeds relied upon by plaintiff do not cover the locus in quo, if the boundary in the deeds from Jarrell to Nancy Kuhn and Cochran and Hull followed the right and not the left branch of the river, a question which was properly left to the jury.

Another contention of defendants on their motion for directed verdict is that plaintiff failed to show that the parties were claiming title from a common

source, notwithstanding the showing that the land was originally owned by Jarrell, that plaintiff claimed under Jarrell through mesne conveyances and that defendant P. H. Kuhn deraigned title as devisee of his mother Nancy Kuhn through the deed executed by Jarrell to her. The basis of this contention is that in 1926 the defendants P. H. Kuhn and Pearlie Kuhn conveyed the locus in quo to one Pearl Carter, trustee; that in 1930 the land was sold for delinquent taxes due by Pearl Carter, as trustee, and was purchased by defendant Pearlie Kuhn; and that Pearlie Kuhn paid taxes on the land and was in adverse possession thereof under color of title for more than five years prior to the payment of taxes by Pearl Carter in 1937. This claim to adverse possession under color of title is based upon the following facts: In 1927, the defendant P. H. Kuhn, notwithstanding his conveyance to Pearl Carter in the preceding year, procured two strangers to the title, L. B. Kuhn and D. M. Holstein, to make a deed covering the locus in quo to his wife the defendant Pearlie Kuhn. Following this conveyance, the evidence shows that he continued in possession until the institution of suit in 1938, and the argument is that his possession must be attributed to his wife because of the execution of the deed to her by Kuhn and Holstein. We think that there is nothing in this contention. The possession shown was not by Pearlie Kuhn, but by P. H. Kuhn, and his possession was a mere continuance of the possession which he had already been exercising as devisee of his mother and was in no sense the possession of his wife under the void deed from Kuhn and Holstein. In addition to this, both he and his wife knew that these grantors had no title; and they cannot, therefore, rely upon the deed from them as color of title. State v. King, 77 W.Va. 37, 87 S.E. 170, L.R.A.1918E, 104; Saxton v. Hunt, 20 N.J.L. 487. It is perfectly obvious that the injection of this void deed, which everyone knew to be void, cannot change the nature of defendants' claim so as to cast upon plaintiff the burden of proving title from the state instead of superior title from the common source.

■ Still another contention on the motion for directed verdict is that defendants acquired title to the locus in quo by the payment of taxes and the adverse possession heretofore mentioned, under Constitution of West Virginia Art. XIII, sec. 3, which provides: "All title to lands in this State heretofore forfeited, * * * to the State of Virginia, or this State, or purchased by either of said States at sales made for the non-payment of taxes * * *, vested and remaining in this state, shall be, and is hereby transferred to, and vested in any person * * *, for so much thereof as such person has, or shall have had actual continuous possession of, under color or claim of title for ten years, and who * * * shall have paid the State taxes thereon for any five years during such possession; or if there be no such person, then to any person * * * for so much of said land as such person shall have had claim to and actual continuous possession of, under color of title for any five successive years after the year 1865, and have paid all State taxes charged or chargeable thereon for said period."

The facts with respect to this contention are that the locus in quo was sold as the property of Pearl Carter, Trustee, for delinquent taxes in the year 1930 and was not redeemed by her until 1937. It was purchased at the tax sale in 1930 in the name of defendant Pearlie Kuhn, who paid taxes on it thereafter until the institution of this suit. It is clear, however, that the ten-year period required for possession under claim of right without color of title did not elapse prior to the redemption by Pearl Carter in 1937; and for the reasons pointed out above Pearlie Kuhn had no color of title so as to avail herself of the five-year provision. There is nothing in the payment of taxes, therefore, which entitles defendants to a directed verdict.

### Charge That Line Followed Main Channel of River.

The defendants excepted to the following portion of the Judge's charge: "The jury are further instructed that if they believe from the evidence that the main channel of Big Coal River was, in the year 1891, next to the present state highway No. 3, as shown in dotted lines on the survey made by G. F. Wilson, surveyor appointed by this court to survey said land in controversy, then the land in controversy is embraced in and conveyed by the deed from A. P. Jarrell and wife to S. R. Cochran and C. H. Hull, and is not embraced in and conveyed by the deed from A. P. Jarrell and wife to Nancy M. Kuhn."

The controversy with respect to the boundary was whether the dividing line between the Kuhn and the Cochran and Hull tracts followed the right or the left branch of the river. There were two distinct branches of the river around the island, both of which were shown to have carried a considerable volume of water in the year 1891. Which of these was intended as the boundary line constituted a latent ambiguity in the deeds, to be resolved by the jury in the light of the parol evidence showing the intention and understanding of the parties. 22 C.J. 1194, 1195; Snider v. Robinett, 78 W.Va. 88, 88 S.E. 599; Belcher v. Big Four Coal, etc., Co., 68 W.Va. 716, 70 S.E. 712. Much evidence of this character was introduced, including evidence as to the location of corners and boundaries and evidence that Nancy Kuhn and P. H. Kuhn exercised undisturbed possession of the island for many years. Whether one of the branches of the river was wider or deeper than the other and whether one could be considered as the "main" channel of the river, were circumstances to be considered by the jury in resolving the ambiguity and determining the intention of the parties; but it was error, we think, to single out a single circumstance, such as that one of the branches was of such size or volume as to be considered the main channel of the river in comparison with the other, and instruct the jury that their verdict should be governed by their finding as to that.

### Exclusion of Evidence of Adverse Possession Prior to 1926.

There is evidence that Nancy Kuhn exercised various acts of possession over the locus in quo from the time of the acquisition of her title in 1891 to her death in 1917, that P. H. Kuhn, her son and devisee under her will, exercised possession over same after her death and until the bringing of this suit and that he built a fence around the island in the year 1922 and has cultivated it since that time. The trial judge excluded from the consideration of the jury evidence of possession prior to the execution of the deed to Pearl Carter, trustee, in the year 1926, on the theory that defendants divested themselves by that deed of any title which had been acquired up to that time. This, we think, was error.

In the first place, there is no justification in the record for the conclusion that the deed to Pearl Carter, trustee, was intended to convey anything more than a naked legal title with a resulting trust in favor of the grantor, P. H. Kuhn. No trust was declared in the deed; and there is thus presented a typical case of a resulting trust in favor of the grantor. Pomeroy's Equity Jurisprudence, 4th Ed., vol. 3, sec. 1032; note 51 Am.Dec. 756. Although trusts might be established by parol prior to the enactment of sec. 3524(36-1-4) of the West Virginia Code in 1931, no evidence was offered to show that a trust in favor of any one other than the grantor was intended, and the evidence is that he continued in possession of the property up until the time of suit.

In the second place, even if the conveyance to Pearl Carter be assumed to be sufficient to convey title to her, adverse possession prior to the conveyance should have been considered by the jury, on the theory that title in her would defeat the claim of plaintiff. Even though she had not answered in the case, the other defendants, to defeat plaintiff's recovery, could set up her title which she had derived from them and which they had warranted to her. 18 Am.Jur. 52. The jury, in such case, could consider the possession of P. H. Kuhn prior to the conveyance to Pearl Carter as well as his possession subsequent thereto as tending to show that title had been acquired as against plaintiff by adverse possession; for the rule is well settled that, where as here the conveyance is with covenant of warranty, adverse possession on the part of the grantor, even after the conveyance, inures to the benefit of the grantee, for he is presumptively the tenant of the grantee. Blake v. O'Neal, 63 W.Va. 483, 61 S.E. 410, 16 L.R.A.,N.S., 1147; 2 C.J.S., Adverse Possession, § 95, p. 652.

It is argued that plaintiff's recovery may not be defeated by showing title in Pearl Carter for the reason that she is a defendant in the case and has defaulted. No authority is cited in support of this proposition, and we know of none. It ignores the rule that plaintiff must recover on his title as it stood at the commencement of the suit (18 Am.Jur. 25) as well as the rule that he must recover on the strength of his own title and not on the weakness of that of his adversary. Plaintiff does not claim under Pearl Carter in any way, so far as the record shows; and the fact that she is in default, while it would preclude her from defending the ac-

tion, would not vest title in plaintiff. Nor would it preclude Pearl Carter from suing P. H. Kuhn for breach of the warranty of title contained in his deed to her. No contention was made in the court below that the default of Pearl Carter prevented the other defendants showing adverse possession prior to the deed to her. No default judgment was taken against her, but the case was submitted to the jury as to her along with the case against the other defendants. Certainly, the fact that she has defaulted should not be permitted to preclude the defense of adverse possession on the part of the defendants where, so far as the record shows, she may have no more than a naked legal title to the property with a resulting trust in favor of defendants.

### Charge as to Fraud.

 With respect to the deed from L. B. Kuhn and D. M. Holstein to the defendant Pearlie Kuhn, the court charged the jury as follows: "I hold, and so instruct you, that that deed from Holstein and Kuhn to Pearlie Kuhn, dated March 1, 1927, was a fraudulent transaction on their part, being, as I say, only seven months from the time that they had conveyed the land therein to Pearl Carter, trustee, and that it was not what we term color of title. Now, color of title means, if I convey to you one hundred acres of land by metes and bounds and you have possession of any part thereof, why, that is possession of the whole. Now, undoubtedly there has been certain possession of patches of it, if I caught the testimony correctly, but that is for you and not for me, of this island by these people since that time, but it is not a color of title, taking the whole island according to their metes and bounds in that deed from Holstein and Kuhn to Pearlie Kuhn. That is an injustice, as I call it, and the courts called it an unjust and a fraudulent transaction; so as I see it, we are back to the point for the jury to decide, whether Nancy Kuhn's line ever crossed the upper bank or stopped at the hemlock or spruce pine, as we called it then, and rock."

We think that this charge was correct in so far as it instructed the jury that the deed could not be relied on as color of title. State v. King, supra. We do not think, however, that the charge that it constituted a fraudulent transaction was justified. The evidence is that P. H. Kuhn procured the deed to be executed to his wife in an ignorant attempt to vest title in her without first conveying title to the grantors. There is no evidence that it was done with any intent to rely upon the deed as color of title or in an effort to defraud creditors or any one else. The fact that prior thereto conveyances had been made to Pearl Carter, trustee, does not establish fraud; for there is nothing to show that Pearl Carter was not trustee for the grantors and the continued possession of P. H. Kuhn tends to show that this was intended. The deed was, of course, void; and, as both Kuhn and his wife knew that the grantors had no title, they could no more rely upon it as color of title than they could have relied upon a deed which they had executed to themselves. This does not mean, however, that they were guilty of fraud in the transaction. Fraud in the popular understanding of the term involves an element of moral turpitude or bad faith. It is never presumed, but must be clearly proved; and the charge that the defendants had been guilty of fraud was not justified by the evidence and must necessarily have prejudiced them very greatly before the jury.

For the errors indicated, the judgment appealed from must be reversed and the cause remanded for a new trial.

Reversed.