## PIERRE CHALLEFOUX and PETER L. GRIGNON,

### vs.

## LOUIS DUCHARME, SUSAN DUCHARME, EPHRAIM SHALER *et al.*

APPEAL IN EQUITY FROM DODGE CIRCUIT COURT.

By an act of Congress approved February 12, 1823, a tribunal was instituted, consisting of a board of commissioners for the purpose of "ascertaining and deciding upon the rights of persons claiming lands at Green Bay, Prairie du Chien, and the county of Michilimackinac;" these commissioners were required to report their decision to the secretary of the treasury, to be laid before Congress. *Held*, that these commissioners having decided upon claims, reported, and Congress having confirmed such decision, this court will not go behind the act of confirmation to examine the evidence on which the report and decision of the commissioners was based.

The decision of these commissioners was not final until confirmed by act of Congress, but when so confirmed the court will not look behind the act of confirmation, but consider it final and conclusive, both as to the sufficiency of the evidence on which the report was made, and the capacity of the confirmee to take the grant under the act.

A grant of land by the government may be made by a law, as well as by a patent pursuant to a law, and a confirmation of title by law, is as effectual as a grant, as a patent containing direct words of gift and grant.

Where the same tract of land was confirmed to two persons, each equally competent to take under the act, each took an undivided moiety of the land as tenants in common.

The grant of the lands in the districts aforesaid, is made by act of Congress confirming the report of the commissioners, and takes effect *eo instanti* with the act of confirmation.

A silent possession by one tenant in common, accompanied with no act which can amount to an ouster, will not be construed into an adverse possession.

THE bill in this case was originally filed in the Circuit Court of Brown county, and afterwards removed to Dodge county, where the cause was brought to hearing and final decree, from which the complainants appealed.

Although a great amount of testimony was taken and used at the hearing in the court below, as the case was determined in this court upon the law, as was manifest from the facts alleged in the bill and admitted in the answers, the evidence is omitted.

The bill of complaint avers, that by virtue of an act of the Congress of the United States, entitled, "An act to revive and continue in force certain acts for the adjustment of land claims in the territory of Michigan," approved February 21, 1823, one Pierre Challefoux, on the 17th day of September following, made claim to lot numbered twenty-seven, on the plat of private claims situate on the west side of Fox River, then in the township of Green Bay; that in support of said claim he presented the affidavits of Jean Baptiste Brunette and Jean Baptiste Broder, stating that on the first day of July, A. D. 1812, the said Challefoux occupied and cultivated said tract; that, upon consideration of said proofs, the commissioners of the United States, appointed under said act, confirmed said claim, with the proviso that it should not conflict with any confirmation theretofore made. The bill further avers, that said claim did not conflict with any confirmations theretofore made, but that on the same day, said commissioners recommended the same tract for confirmation to the defendant Susan Ducharme, then called Susan La Rose; that the claim of said Susan described the tract by metes and bounds, and not by the number of the lot; that the only evidence the said Susan produced in support of her said claim, were the affidavits of Joseph Roy and Pierre Cousey, stating that said Susan was the grand-daughter of one Augustin Ashwaubunay; that on the first day of July, A. D. 1812, the said Ashwaubunay occupied and cultivated said tract; that in the year 1815, he died; that previous to his death he verbally bequeathed the same to the said Susan; that since said bequest the said tract has been in her possession and under cultivation; that on the same day claims were recommended for confirmation, by said commissioners, to one Therese La Rose and one Therese Rankin, adjacent to said lot 27, each claim embracing about 640 acres of land, and each claim supported by no other evidence than the affidavits of the said Roy and Cousey, stating the occupancy of said Augustin Ashwaubunay on the first day of July, 1812, his parol devise to said claimants respectively and his death.

The bill further avers, that no such person as Augustin Ashwaubunay ever lived on said land, or in this country; that Susan La Rose was descended from an Ottawa Indian by the name of

Ashwaubunay; that he never bore any Christian name, that he never was a citizen of the United States, nor paid any allegiance to the laws thereof; that in 1821, the said Susan claimed the same tract of land before the same commissioners; that in her application she described it as lot 27; that she presented the affidavits of the same Roy and Cousey, stating that on the first day of July, 1812, said tract was occupied by "Ashwaubunay;" that upon such testimony said claim was rejected by said commissioners; that in 1823, the proceedings before the commissioners were *ex parte;* that the testimony was taken in Brown county and transmitted to the commissioners in Detroit; that said Susan by withholding the number of the lot in her description given in 1823, and by affixing the Christian name of Augustin to the Indian Ashwaubunay, intended to deceive and did deceive said commissioners.

The bill further avers a general confirmation by Congress, in 1828, of all claims confirmed or recommended for confirmation by said commissioners, with the proviso that the same should not prejudice the rights of third persons, or extend further than to relinquishment by the United States of all title to said lands.

The bill avers the death of said Pierre Challefoux in 1824, and traces his title to the premises by inheritance and by purchase to the complainants; also, that one Louis Dubay occupied the same under a parol demise from said Pierre Challefoux at the time of his decease, and continued to occupy the same up to 1835, when he died; that subsequently the said Susan married the said Louis Ducharme, and about the year 1837 took possession of the premises and obtained a patent therefor from the United States; that on the 31st day of October, A. D. 1842, they conveyed to the defendant Ephraim Shaler, the north half of said premises, under whom the other defendants have obtained conveyances to different portions of said north half of said tract, with a description of the several deeds and a reference to the record thereof.

The bill prays, that the defendants may answer; that the patent may be delivered to the complainants; that the defendants may severally be decreed to quit-claim the premises to the complainants; that their title may be quieted, and for general relief, process, &c.

Shaler in his answer, says that he is ignorant, and has not been informed, save by plaintiffs' bill, and cannot set forth in his belief, or otherwise, whether Pierre Challefoux, deceased, did, at some time in September, 1823, or at any other time, claim lot 27 before the commissioners appointed under the act of Congress, approved February 21, 1823; and he is also ignorant, save by complainants' bill, what evidence was adduced in support of said claim, or whether said commissioners decided that such claim should be confirmed; but this defendant further says, that if any such claim was made by Pierre Challefoux, deceased, and recommended for confirmation by said commissioners, such claim was made subsequent to the claim of the defendant Susan Ducharme, was supported by false and fraudulent statements of fact, and interfered and conflicted with the claim previously confirmed to the said defendant, Susan, and was recommended as aforesaid by the commissioners with the express proviso that it should not interfere with any claim previously confirmed.

That he is informed and believes the confirmation of the claim of defendant Susan, bears date the 1st of November, 1823, and that the evidence given in favor of said claim consisted of the affidavits of Pierre Cousey and Joseph Roy, and also by the affidavit of John Lawe, all of whom were highly respectable citizens of Green Bay, and who resided there continually from the year 1800 up to the time when said affidavits were made, in 1853; that they were all intelligent and disinterested persons, who must have been well and familiarly acquainted with the facts and circumstances of which they bore testimony.

Admits that there were two other tracts confirmed, to Therese Rankin and Therese La Rose respectively, containing each about one section of land, but whether supported by any or what testimony, this defendant is not informed; but this defendant insists that it is entirely immaterial to the issue in this case, whether the said claims of Therese La Rose and Rankin were confirmed or not, or upon what facts and circumstances they were confirmed, or whether the two claims of the persons above named and the defendant Susan did in the aggregate contain a quantity of land equal to nineteen hundred and twenty acres, as there is nothing in the laws of Congress, or in the rules of adjudication adopted by the commissioners, prohibiting claim-

ants from being confirmed in as many tracts as had been occupied and cultivated by them, or by the persons under whom they claimed title.

That he is informed and believes that there was a person residing at Green Bay by the name of Ashwaubunay, who occupied the said private claim 27; that he was of the Ottawa blood; that he was reared in the habits of the mixed blood inhabitants; that he was not a member of any tribe of Indians, but was wholly separated from the Ottawas, with whom he claimed relationship; that he was called Augustin by his neighbors and associates; that he was always regarded as a native born citizen of the country, and paid the same allegiance to the laws of the United States which was paid by other citizens of the country.

Admits that Susan put in her claim to said tract 27 in 1821, before the said commissioners, and adduced the testimony of two witnesses, Cousey and Roy, in support of her said claim, and that said claim was not allowed; but this defendant insists that there is no material variation between the statements made by said witnesses in 1821, and those upon which the claim of said defendant, Susan, was confirmed in 1823; and that the reason why said claim was not confirmed in 1821, he is informed and believes was because the said defendant, Susan, did not prove possession in her ancestor from 1796 to 1807, as by the then existing laws was necessary to authorize a confirmation by the commissioners. And further, he admits that the testimony taken in 1823 was *ex parte* as he is informed and believes, and was taken in Brown county and adjudicated upon in Detroit, in the state of Michigan; but this defendant will insist, that the said commissioners were authorized to take, and did take into their consideration the testimony furnished them in 1821, and that the testimony then taken, was taken by an agent of the commissioners publicly at Green Bay, after public notice to all the citizens of said place.

Admits that Pierre Challefoux died in or about the year 1824; but this defendant, upon information and belief, denies that the said Pierre Challefoux left any legitimate children at his decease as his heirs at law; and will insist that Pierre, Mary and Charlotte, were the bastard children of the said Pierre Challefoux, begotten of an uncivilized Chippewa squaw.

Denies, upon information and belief, that Louis Dubay ever occupied any portion of said P. C. 27 under the said Pierre Challefoux, or in any other manner, except as the tenant at sufferance of the defendant Susan.

Denies, upon information and belief, that Mary Challefoux was ever married to Jean Baptiste Grignon, but admits that said Mary died in or about the year 1845, and that Mary Grignon is her only surviving child and heir.

Says that he is ignorant and not informed, save, &c., and cannot set forth, &c., whether Charlotte has been heard of since 1823.

Says, on information, &c., that Louis and Susan were married in 1844, but is not informed, &c., save, &c., and cannot set forth &c., whether the said Dubay was then dead or has since died.

Says that on the 5th of Nov., 1829, the president of the United States issued to the defendant Susan, by her maiden name, a patent, whereby the United States granted to her, and her heirs and assigns forever, the said tract of land No. 27, and that said Susan was seized in fee simple thereof. Further says, that on the 31st day of October, 1842, the defendant Susan sold and conveyed to this defendant, by deed, &c., the north half of the said tract No. 27, &c.; that the consideration for said deed was the sum of $500, which sum was paid by this defendant to the said Susan therefor. And that this defendant never had any notice of the claim of Pierre Challefoux, or of any other person claiming under him, at the time of such conveyance or at any other prior or subsequent time, until the filing of complainants' bill. And this defendant insists upon these facts, and claims the same benefit as if he had pleaded the same.

Says that under and by virtue of the said conveyance, he entered into possession of the north half of said premises, and continued to hold and possess the same, and made large and valuable improvements thereon, until the 31st day of January, 1849, when this defendant conveyed a portion of said premises to Josephine B. Patterson, and the remainder thereof to Oliver W. Shaler; that the improvements consisted of clearing, fencing, and erecting buildings on said premises, and have cost this defendant in the aggregate the sum of $1,000 at least.

Says that he believes said improvements were made by him with the knowledge of the said complainants, and of Mary Challe-

foux aforesaid, and of Mary Grignon, one of the defendants, and that they well knew at the time he was negotiating for the purchase of said premises his intention of purchasing, and when said negotiation was completed, and the deed aforesaid executed to him by said Susan.

Says he is informed and believes that Susan is a descendant of said Augustin Ashwaubunay; says that he is informed and believes that by virtue of the occupancy of the said Ashwaubunay, and of the confirmation and patent hereinbefore referred to, the said Susan continued to claim and hold the said tract of land 27, as of a good and perfect and absolute estate in fee simple, and under such claim of title was in actual possession, adverse to the said complainants, and those under whom they claim, until she conveyed the north half of said premises to this defendant, as hereinbefore set forth.

Says that under the conveyance hereinbefore mentioned he had ever since the date of said deed, claimed the said premises in fee simple, and had been in the actual possession of the same so conveyed to him, adverse to the said complainants, and those under whom they claim, until he conveyed the same to Josephine B. Patterson and O. W. Shaler, as aforesaid, which adverse possession of the said defendant, Susan Ducharme, and this defendant, has continued for more than twenty years preceding the execution of said deeds to Josephine and Oliver, and the filing of the complainants' bill. And this defendant will resist upon such adverse possession, &c.

The answers of Susan and Louis Ducharme, Emma C. Shaler, Abram C. Patterson & ux., John L. Monroe & ux., and Francis Desnoyers, are substantially like the answer of E. Shaler, therefore are not abstracted. The bill was taken as confessed.

*Howe & Haines*, for complainants.

*Billinghurst*, for defendants.

*By the Court*, COLE, J. A tribunal was instituted by an act of Congress approved February 21st, 1823, consisting of a board of commissioners, for the purpose of "ascertaining and deciding on the rights of persons claiming lands at Green Bay, Prairie du

Chien, and the county of Michilimackinac." The powers and duties of the commissioners, as defined by the act, were to ascertain and *decide* on the rights of persons claiming land in those districts, and transmit their report containing transcripts of their decisions, to the secretary of the treasury, to be laid before Congress. The fifth section of the act designates who might be claimants, in the following language:

"That every person who, on the first day of July, one thousand eight hundred and twelve, was a resident of Green Bay, Prairie du Chien, or within the county of Michilimackinac, and who on the said day occupied and cultivated, or occupied a tract of land which had previously been cultivated by said occupant, lying within either of said settlements, and who has continued to submit to the authority of the United States, or the legal representatives of every such person, shall be confirmed in the tract so occupied and cultivated," &c.

Pierre Challefoux, the father of the complainant Challefoux, and from whom the complainant claims title, filed before the commissioners, pursuant to the act, a claim to lot number twenty-seven, at Green Bay, and proved by two witnesses, Baptiste Brunette, and Jean Baptiste Broder, that he occupied and cultivated the tract on the 1st day of July, A. D. 1812, and had submitted to the authority of the United States.

The defendant Susan La Rose or Susan Ducharme, from whom all the defendants derive title as purchasers (except Mary Grignon, who is a nominal party), also claimed the same tract before the commissioners as grand-daughter and heir of Augustin Ashwaubunay. She proved likewise by two witnesses, Pierre Cousey and Joseph Roy, that Ashwaubunay occupied and cultivated the land on the 1st day of July, 1812, and submitted to the authority of the United States.

The commissioners decided in favor of both claims, and confirmed them; and in their report recommended both for confirmation. Congress, by an act approved April 17th, 1828, confirmed "the claims purporting to be confirmed or recommended for confirmation by the commissioners." A patent for the land was issued to Susan La Rose on the 5th of November, 1829. Susan went into actual possession of the land some fifteen years ago, or more. The exact time when she went into possession,

does not very clearly appear, neither is it material in the dispo-
sition of the cause. On the 31st of October, 1842, Susan La
Rose sold and conveyed the north half of the tract to Ephraim
Shaler, and the other defendants derive their title through this
purchase. The complainants file their bill praying that this pat-
ent issued to Susan La Rose, may be delivered up to them, and
that the defendants be decreed to quit-claim their interest in the
premises. And the position upon which the complainants rely
to sustain their cause is, that it is proved that Ashwaubunay
was an Indian, and therefore that he could neither receive or
transmit any right under the act of 1823; and that the title un-
der the grant and patent enured to the benefit of their ancestor
Pierre Challefoux, senior. Considerable testimony has been
taken to establish the fact that Ashwaubunay was an Indian;
and also to show that Challefoux, senior, did not occupy and
cultivate the land on the 1st of July, 1812. The view, however,
which we have taken of the case relieves us from the necessity
of entering upon an examination of the testimony to ascertain
what facts are or are not established by it. For we are of the
opinion that we cannot go behind the decision and report of the
commissioners, and the confirmation of that report by Congress,
and inquire into the sufficiency and nature of the evidence in-
troduced before them.

Congress, well aware of the condition of the country, and the
nature of these claims, saw fit to establish those boards of com-
missioners to examine into and *decide* upon the rights of the
claimants. Reasons of sound policy have led to the establish-
ment of these boards of commissioners to settle claims to land from
time to time, and courts have uniformly approved of the laws,
and sustained the acts of commissioners, when acting within the
scope of their authority. 12 *Wheat.* 530, 601; 6 *Peters,* 763;
7 *id.* 51; 12 *id.* 410; 2 *Howard,* 344. Notwithstanding the act
of 1823 (or more properly the acts of March 3d, 1807, April,
23d, 1812, and May 11th, 1820, all of which have to be looked
into in determining the powers and duties of the commissioners)
empowers the commissioners to *decide* upon the rights of the
complainants, yet those decisions were not final until approved
by Congress. The primary object for which the board of com-
missioners was appointed, seems to have been to examine into

and report to Congress such claims as ought to be confirmed. In the discharge of this duty they had, to a certain extent, to act judicially upon evidence and facts laid before them. They were to decide whether a claim was supported by competent evidence under the law. And this decision, when confirmed by Congress, we think, must be considered final and conclusive. It is admitted by the counsel for the complainants that the decision of the commissioners upon any fact, as, for instance, whether a claimant occupied and cultivated his claim on the 1st of July, 1812, or not, must be considered conclusive, and that no evidence can be now received contradictory to the proofs made before them. But he insists that their decision is not conclusive upon the question, as to whether a person was competent to take under the law or not. In other words that we may inquire into the question as to whether Ashwaubunay was an Indian, but cannot as to whether Challefoux occupied and cultivated the land on the 1st of July, 1812. We are unable to make a distinction between the cases. We think that if we are permitted to go back of the decision of the commissioners, and the confirmation of that decision by Congress, and inquire into the question of the citizenship of a claimant, we may, upon the same principle, inquire into any other fact passed upon by the commissioners. It is not by any means clear that Congress intended to confine the benefits of the act to citizens of the United States. The language of the law is very comprehensive, "that every person" who resided at Green Bay, &c., and occupied and cultivated his claim on the 1st of July, 1812, and submitted to the authority of the United States, might be a claimant for six hundred and forty acres. There might, perhaps, have been cases of Indians abandoning the wild and savage life of their people, who had become permanent habitants, occupying and cultivating the soil, submitting to the authority of the United States, and who would have been entitled to take a claim under the liberal provisions of this act. However, it is not necessary for us to decide whether Congress did or did not intend to discriminate in this respect. We must consider the decision of the commissioners upon a claim as correctly made, upon good and sufficient evidence. It seems that any other rule would at once disturb, and throw open to litigation these old claims, that Con-

gress has been so sedulous in quieting and forever putting at
rest. Considering then the decision of the commissioners, and
the confirmation of that decision by Congress, as conclusive of
the rights of the parties, how, then, does this case stand? Chäl-
lefoux and La Rose make a claim to the same tract of land. The
claims of both were confirmed by the commissioners, and recom-
mended for confirmation in their report. Congress, acting upon
their report, also confirms the claim. In other words, grants the
land to two persons equally competent to take under the grant.
For it has been held that a grant may be made by a law as well
as by a patent pursuant to law, and that a confirmation by law
is as fully, to all intents and purposes a grant, as if it contained
in terms a grant *de novo*. 12 *Peters*, 454; 2 *Howard*, 372. Such
being the case, Challefoux and La Rose took each an undivided
moiety of the land as tenant in common.

It was contended that the confirmation of Challefoux's claim
by the commissioners was conditional, " that it should not con-
flict with any confirmation previously made by them;" while
the confirmation of Susan's claim was absolute and in point of
time prior to that of Challefoux. There are several answers
to be given to this argument, besides stating that it assumes, as
proved, a controverted fact. The commissioners had no power
to grant title to the land; that was an act of sovereign power,
and could only be done by Congress, by general or special legis-
lation. The grant was made by Congress *eo instanti* to both
Challefoux and La Rose. That disposes of the objection. It
might properly be observed, that the commissioners frequently
qualified their confirmation as in this case, and that even if it
were admitted that a confirmation of a claim by the commission-
ers would, under the act of Congress, pass the title, yet, that
Susan La Rose cannot draw an inference from that circumstance
favorable to her rights, without showing that her claim had been
previously confirmed. But this it is impossible to do. In the
report made by the commissioners, her claim comes first in or-
der. Her claim, that of Challefoux, and a great number of
others, purport to have been examined and confirmed the same
day. But it is unreasonable to suppose that they were all acted
upon and confirmed on that day. The position of a claim in

the report is accidental merely, and will not warrant a conclusion from it one way or the other.

Several other objections have been raised against the complainants' right to relief, which will be summarily disposed of.

It was insisted that the complainants were barred of their right of action by the statute of limitations, or by the adverse possession of the premises by Susan La Rose, for twenty years before the filing of the bill. According to our view of the case, Challefoux, senior, and Susan La Rose, took the land under the act of Congress as tenants in common, and the title under the grant or the patent enured to their common benefit. In that case, the possession of Susan La Rose, one of the tenants in common, is the possession of the other. 4 _Kent Com._ 370 ; _Adams on Eject._ 55. It is true, that one tenant in common may oust his co-tenant and hold in severalty. But a silent possession, accompanied with no act which can amount to an ouster, will not be construed into an adverse possession. _McClung vs. Ross,_ 5 _Wheat._ 124. And it does not appear from the evidence that Susan La Rose took actual possession of the premises, claiming to hold them by the patent covering the whole tract for twenty years before the bill was filed. So that we do not think that the complainants have been guilty of such gross laches in asserting their rights as to be barred by lapse of time. But they must be content with the measure of relief which this court, upon equitable principles, is able to give. We cannot grant a decree against the defendant Ephraim Shaler, or any purchaser under him. He purchased the north half of the tract in 1842. He has set up in his answer that he was an innocent purchaser for valuable consideration, without notice of complainants' rights. He must prevail upon this defence. At the time he purchased, his grantor had actual possession of the land. The evidence of her title was the patent issued to her by the government of the United States, embracing the whole tract. It does not appear that he had any knowledge whatever of the report of the commissioners, and that report was not notice _per se_ to him of the complainants' rights. The act of Congress confirmed the claims in the report in the most general manner. They confirmed the claims contained in Vols. one, three, six, eight and nine, of the Reports. Had the act of Congress contained or designated the names of the claim-

ants, it might have been plausibly argued that it would have been notice. But it is necessary to refer to the report to ascertain the names of the claimants, and the act is unintelligible without this report. Under such circumstances, we are unable to hold that the report of the commissioners, or act of Congress was either constructive or actual notice to the defendant Shaler, and his grantees. They entered into possession of their land with a feeling of security which the possession of Susan La Rose and the patent in her name, were well calculated to inspire. They have, or some of them have, made valuable improvements, and they ought now to be protected in their title. The complainants must, therefore, take the south half of the tract, covered by the patent, as their moiety of the premises, relinquishing all claim to the north half, which has been conveyed to Shaler.