## REED et al. v. KNUDSON et al.

No. 5085.   Decided October 28, 1932.   (15 P. [2d] 347.)

*Stephens, Brayton & Lowe,* of Salt Lake City, and *J. Wesley Horsley,* of Brigham, for appellants.

*Thatcher & Young,* of Ogden, for respondents.

FOLLAND, J.

This is a suit to quiet title to a tract of land of about thirty acres, with water rights, situated in Box Elder county, Utah. The property was owned by Wesley Reed Larsen who died intestate October 15, 1928, when about 19 years of age. Plaintiffs contend that on the death of Wesley Reed Larsen the property, under the laws of succession of this state, descended to John Reed, the boy's grandfather on the maternal side then a man 79 years of age. Plaintiff Stephen M. Reed is the administrator of the estate of John Reed who died intestate June 6, 1929, and the other plaintiffs are the sons and daughter of John Reed. The defendants are aunts of Wesley Reed Larsen on the paternal side. Wesley Larsen, father of Wesley Reed Larsen, was the owner of the land involved before his marriage to Phoebe Reed, the daughter of John Reed. Wesley Reed Larsen was the only issue of this marriage. Shortly after his birth the mother died and the father and child thereafter lived with the defendant Anna Cottom, and she, together with her two sisters, the defendants Alice Knudson and Clara Christensen, raised the child to almost maturity. In 1918 Wesley Larsen died leaving Wesley Reed Larsen his sole and only heir. The estate was administered and the property distributed to him. Thereafter C. O. Christensen, the husband of the defendant Clara Christensen,

was appointed guardian, and continued to act in that capacity until the death of Wesley Reed Larsen. Deceased left surviving him only the grandfather on his maternal side and the three aunts on the paternal side. After the death of Wesley Reed Larsen, C. O. Christensen his former guardian talked with John Reed relative to the estate, each apparently assuming that it would descend in equal shares to each side of the house, at which time Reed suggested that, since the boy had been reared by his aunts, the property should be equally divided, one-half to him and the other one-half to the three aunts. As a result of this conversation Christensen and Reed went to Ogden and there consulted with LeRoy B. Young, an attorney. Mr. Young advised Reed that in his opinion he, the grandfather, was entitled to inherit all the property. Reed said that did not matter; that he had agreed that one-half should go to each side; that the father of the boy was the original owner of the farm; and that his family had taken care of the boy and he wanted it fixed that way. Christensen suggested that, if not heirs, the aunts would probably assert a claim against the estate to compensate them for the expense of rearing the boy, but, if the estate should be divided, that would be a complete adjustment of the matter. At the suggestion of both Reed and Christensen, the attorney prepared assignments for execution by Reed to the defendants and by the defendants to Reed, each conveying and assigning a one-half interest in the estate. The assignment executed by John Reed in favor of the defendants is as follows:

"In the District Court of the First Judicial District of the State of Utah, in and for the County of Box Elder.

"In the Matter of the Estate of Wesley Reed Larsen, Deceased.

"Assignment

"Know all men by these presents that I, John Reed, a widower of Brigham City, Box Elder County, State of Utah, for and in consideration of the sum of One Dollar and other valuable consideration and the mutual promises on the part of the respective partie hereto do hereby sell, assign, transfer and set over to Alice Knudson, Clara Christensen and Anna Cottom, an undivided one-half interest in and

to all of the estate, both real and personal belonging to Wesley Reed Larsen at the time of his death, or any interest which said estate may have acquired subsequent to his death and I hereby direct the District Court above named to distribute to the assignees hereinbefore named said undivided one-half interest in said estate in the event that the same shall be mutually agreeable to all the parties hereto.

"In witness whereof I have hereunto set my hand the day and year first above written.

"John Reed.

"State of Utah, County of Weber, ss.

"On the 2nd day of November, 1928, personally appeared before me John Reed, the signer of the foregoing instrument, who duly acknowledged to me that he executed the same.

"LeRoy B. Young, Notary Public
"Residing at Ogden, Utah.

"My Commission expires September 3, 1929.

[Seal.]"

A similar document with John Reed named as assignee was executed by Alice Knudson, Clara Christensen, and Anna Cottom and delivered to John Reed. The paper signed by John Reed was delivered to and left with the attorney, LeRoy B. Young. Plaintiffs claim all the property as heirs of John Reed. The defendants claim an undivided one-half interest by virtue of the above assignment.

Under the issues framed by the pleadings, the questions for determination in this suit were: (a) The competency of John Reed to make the assignment; (b) fraudulent representations alleged to have been made inducing its execution; (c) whether or not there was a valid delivery; and (d) whether there was consideration to support the assignment. The case was tried to the court. Findings were made against plaintiffs on all the issues and a decree entered quieting title to an undivided one-half interest in the property in dispute in the defendants, and an undivided one-half interest in plaintiffs. From this judgment plaintiffs appeal and assign several alleged errors. Only one proposition is seriously argued in appellants' brief; that is, was there a valid assignment of an undivided one-half

interest in the estate by John Reed to the defendants. This is discussed under two heads: (a) That there was no valid delivery, and (b) there was no consideration to support the assignment. We need not discuss the question of consideration because if this assignment is anything it is a gift by Reed to the defendants of a one-half interest in the estate. This seems to be conceded, and rightly so because no valid claim has been asserted or filed or relied on by the defendants for the expenses of raising the boy, and, under the law of this state, John Reed succeeded to the property of the deceased as sole heir. The defendants, the aunts of the deceased, could assert no valid claim as heirs. While respondents argue that the giving up of such claims by defendants was a sufficient consideration to support the assignment, it is apparent they rely on the proposition that the assignment was in fact an executed gift with delivery by Reed. No consideration is necessary to support an executed gift. Undoubtedly John Reed had the right to make a gift to Anna Cottom, Clara Christensen, and Alice Knudson if he so desired. The court made findings to the effect that Reed was mentally competent and acted without undue influence in making the assignment. There is evidence to support these findings and no preponderance of evidence which would justify us in making contrary findings.

The decision turns on whether there was a valid delivery of the instrument of assignment so as to make it effective as an executed gift. On this point the court found as follows:

"Whereupon, at his request, the said LeRoy B. Young, in order to give effect to the wishes of the said John Reed, prepared a certain written assignment, and that the said John Reed thereupon signed the same and delivered it to the said LeRoy B. Young to be held by him until the same should be presented to this court for final distribution of said estate, a copy of which said assignment is set out in full in defendants' answer and is hereby referred to and made a part of these findings by reference the same as though it were set out in full, and that thereafter the said Thatcher & Young, at the request of the said John Reed, prepared a petition asking for the appointment of the

said C. O. Chrisensen as administrator of said estate, which petition the said John Reed thereupon signed, and the said C. O. Christensen was thereafter duly and regularly appointed as the administrator of the estate of the said Wesley Reed Larsen, and that said letters have never been revoked."

It is not disputed that the instrument was never in the physical possession of the defendants or either of them but remained in the possession of Mr. Young. Appellants contend that there is no evidence to support the quoted finding of the court and that the record discloses that Mr. Young was John Reed's agent in accepting delivery of the instrument and that his agency terminated at Reed's death. The question before us narrows itself down to this: Was the delivery to Young a delivery to the defendants? The question is not free from difficulty because of lack of definite instruction by John Reed to Mr. Young at the time of the delivery of the paper to him. Yet, we think the evidence, and the inferences properly drawn therefrom, sufficient to support the findings of the court and that the findings of fact are not against the weight of the evidence. The rule applicable is well stated in 28 C. J. 639, as follows:

"Where a delivery is thus made to a third person, the question whether the gift was thereby completed without actual delivery to the donee depends entirely upon whether the person to whom the property is delivered receives it as the donor's agent or as trustee for the donee. And this is to be determined from the intention of the donor, the situation and relation of the parties, the kind and character of the property, and the things said and done in regard thereto, as disclosed by the evidence. If the property remains under the control of the donor, although in the keeping of the third person, and the latter is subject to his further direction as to its final disposition, then his relation is that of an agent. If, however, the property is delivered by the donor with intention that the present title and ownership shall pass to the donee and such intention is carried into effect by the language employed and the things done in relation thereto, then the gift is executed and the third person is a trustee for the donee."

See, also, *Gappmayer* v. *Wilkenson*, 53 Utah 236, 177 P. 763; *Wilson* v. *Wilson*, 32 Utah 169, 89 P. 643, and *Woolley* v. *Taylor*, 45 Utah 227, 144 P. 1094.

There was here a delivery of the instrument to a third person. If delivery was made to Young as agent for John Reed, the instrument to be held by him subject to control of the donor, then, of course, there was no delivery to the donees. If, on the other hand, the instrument was delivered to Young with an intent on the part of Reed to divest himself of any and all control over it and that the present title and ownership pass to the donees, then the delivery was complete. Delivery is a matter of intent and the intent is to be arrived at from all the facts and circumstances in evidence. *Mower* v. *Mower*, 64 Utah 260, 228 P. 911. The court found, and there is evidence to support it, that C. O. Christensen was duly appointed administrator of the estate of Wesley Reed Larsen, deceased, and it may reasonably be inferred that Young was the attorney for the administrator. There can be no doubt that John Reed intended to give the grantees an undivided one-half interest in the estate. This intent is shown by his acts and declarations to that effect both before and subsequent to the execution of the assignment. Intent to make a gift is not sufficient unless there was also delivery of the instrument. Although he lived seven months after the execution of the instrument and delivery thereof to Mr. Young, Reed made no attempt to control it or to withdraw it, nor did he do any act inconsistent with an intention to effectively pass it beyond his control. He delivered it to Mr. Young without restrictions or reservations and we think the inference reasonably clear that he did not intend to reserve to himself any further control over the instrument or the property. The plaintiffs herein, or at least some of them, were informed shortly after the execution of the two instruments that such papers had been signed but no effort was made by them during John Reed's lifetime to have the assignment by Reed set aside or recalled. There is testimony on behalf of plaintiffs to the effect that Reed, in discussing with them the paper he had signed, was somewhat confused and did not fully understand what he had done.

There is, however, testimony to a contrary effect showing that he knew and appreciated what he had done and indicating that he had completed the transfer of the one-half interest so far as he could do so. Thomas Cottom, the husband of one of the defendants, testified that John Reed came to see him when he was sick with the "flue" in December, 1928, and said to him: "You folks have been a real father and mother to that child, and you should have all the property." Cottom said: "I am not thinking of that. The pleasure of it is all I want, is enough for me. We care nothing about his property; we are not interested in that. We have loved the child, and we don't want your money." Whereupon Reed said: "I want you folks to have half of it; I have signed it over."

Cottom said this was the first he knew of the assignment. W. O. Knudson, the husband of another of the defendants, testified to a conversation with Reed wherein John Reed told him the matter had been "fixed up. It is fifty-fifty, half to me and half to Mrs. Cottom and the heirs on the other side, his family, that is, his father's family, Reed's father's family." At this time Reed seemed to be satisfied with the arrangement. Under the circumstances disclosed a division of the property in this manner was eminently fair. John Reed fully appreciated that the other side of the family was justly, if not legally, entitled to a one-half interest in the estate. With full knowledge that he was sole heir he made the assignment for the purpose of doing justice in the premises. We think the trial court's findings should not be disturbed.

The judgment of the district court of Box Elder county is affirmed with costs to respondents.

CHERRY, C. J., and STRAUP, ELIAS HANSEN and EPHRAIM HANSON, JJ., concur.