Ransberry, Appellant, *v.* Brodhead's Forest and Stream Association.

Argued April 11, 1934. Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*F. B. Holmes,* for appellant.

*C. C. Shull,* of *Shull & Shull,* for appellee.

OPINION BY MR. JUSTICE KEPHART, June 30, 1934:

This action is primarily to test the title to part of a
stream of water in the Pocono Mountains, valued highly
because of its trout fishing possibilities. It, with the
land in dispute, is now, and has been for a number of
years, in possession of the Brodhead's Forest and Stream
Association, defendant. Plaintiff, claiming the prop-
erty, instituted by a petition this action to quiet title.
An issue was framed, which was tried by the learned
judge of the court below without a jury, and his decision
was that title was in the association.

The land in dispute is a very small part of a tract of
more than 1,000 acres that was at one time owned by
Michael Ransberry. In 1867 he conveyed a part of this
land to Thomas Stites and others; the deed, under which
appellee claims, described the land conveyed by metes
and bounds, and stated it to be "the whole of four orig-
inal tracts in warrantee names of Michael Ransberry,

Manuel Salliday, William Nichols and John Towns, and the whole [excepting the small strip on the east side of Brodhead's Creek] of the tract in the warrantee name of George Salliday."

Michael Ransberry is now dead and his rights are possessed by his son, George Ransberry, appellant, so, in effect, the latter has been testing his father's conveyance and is bound by the rule that where the terms of a deed are doubtful the court will adopt that construction which is most strongly in favor of the grantee and against the grantor (Collison v. Phila. Co., 233 Pa. 350); if he is to recover at all he must do so on the strength of his own title.

Appellant bases his claim to one of the two pieces of land principally upon the location and description of an old warrant tract; this tract and a junior warrant overlap. Appellant's contention is that the boundary of the land conveyed in the Sites deed must be taken to be the same as that of the old warrant tract, whereas appellee claims the land to be that of the junior warrant. The title to all the land called for by both warrants was vested in Michael Ransberry; since there was a common source of title, it is unnecessary to consider the questions argued by counsel as to the priority of nondescriptive warrants, the time of return of a survey to the land office, and what rights would be acquired under them.

Where a grantor has title to all the land covered by conflicting warrants, he may convey it, regardless of the original warrants, so as to fasten in the grantee a good title, and, if any question on the warrants should arise, that warrant will be selected which will fix in the grantee the stronger title. The boundaries of the original warrants are, therefore, no longer important. When the land was sold by metes and bounds, the grantor should have had it located on the ground. With this duty Michael Ransberry no doubt complied, for, as the court below found—and the testimony on this point is very convincing,—the description by metes and bounds in the Stites deed may readily be located.

A careful examination of the record and the maps before us convinces us that the court below correctly concluded that the deed to appellee's predecessor conveyed the land in dispute.

Appellant argues, however, that there is a misdescription in the Stites deed in that one of the properties named as being adjacent to land conveyed at the beginning point of the description, did not, in fact, adjoin the grantor's land at that place; if no point along the land named as being adjacent is taken as the beginning point, the tract it conveyed cannot be located on the ground. On the other hand, if the beginning point is placed on the line of the land warranted in the name of *Thomas* Hilbourn, instead of *Joseph* Hilbourn as named in the deed, the courses and monuments on the land coincide with those named in the deed. It is apparent that here was a simple misnaming of the Hilbourn tract, and this cannot be permitted to destroy the effect of the deed. If there is a misdescription in the name of one of the adjoinders, and it could by a change of name be reconciled with the other courses and distances called for in the deed, such reconciliation should be effected unless the rights of third parties intervened. No such fact is here present.

Appellant also urges that the description in the Stites deed will not close, and therefore not the description by metes and bounds, but the recital of warrant tracts must govern as to what property passed by the deed. The territory in dispute is wild and rugged; many of the warrants and surveys in the early days were not accurately made. If present title holders were to be held down to the exact courses and distances contained in early deeds, very few of the old titles would stand. In such cases an effort should be made to supply by adjoinders the omitted boundary. Of course the metes and bounds must be considered; they should be followed and, if possible, made to close, but, as indicated in Wharton v. Garvin, 34 Pa. 340, 342, where there are no natural

or artificial monuments by which to close the line, it follows of necessity that the survey should be closed by direct line between the termini of the lines established on the ground. That is what was done in this case, and we see no error in it.

The other tract of land which appellant claims is that omitted from the Stites deed as "the small strip on the east side of Brodhead's creek" in the warrantee name of George Salliday. Here the entire dispute is as to whether appellant's title to the land, which, generally, is not in dispute, extends to the middle of the stream or runs only along the east bank. The place of beginning in the Stites deed was a stone on the east bank of the creek; the end of the description is "thence, crossing the creek......to a post on the east bank of said creek; thence, down the same......to the place of beginning." This meant that the east bank of the stream was to be the boundary line. The line crossed the creek both at the beginning and ending, and there is no error in the conclusion of the court below that the entire bed of the stream was conveyed by the deed.

The assignments of error are all overruled, and the judgment is affirmed.