LOSEE et ux. v. JONES et ux.

No. 7507.   Decided August 23, 1951.   (235 P. 2d 132.)

See 26 C. J. S., Deeds, sec. 46. Deed to take effect on grantor's death, delivery to third person as sufficient for. 16 Am. Jur., Deeds, sec. 143-147; 52 A. L. R. 1222.

*H. Maurice Harding, Christenson & Christenson,* Provo, for appellant.

*Elias Hansen,* Salt Lake City, for respondent.

CROCKETT, Justice.

This is an action to quiet title to certain lands brought by Dean Losee and his wife against David H. Jones and wife. The Jones defended and filed a counterclaim seeking to quiet title in themselves.

The Losees, plaintiffs and appellants herein, purchased a tract of land comprising 4.40 acres from Margaret Jones Ludlow. The land was part of a larger tract of pasture land which was within a single enclosure. David H. Jones, the brother of Margaret Jones Ludlow, claimed the larger tract, including the 4.40 acres, and used it both prior to, and at the time of the purchase by Losee from Mrs. Ludlow, and has continued to use it at all times since the purchase except that prior to the sale of the land to Losee the Ludlows did pasture horses on the land for a few weeks each year.

All parties rely upon the prior title of Alice Ann Jones,

the mother of David H. Jones and Margaret Jones Ludlow, and the claims here involved all stem from her ownership, therefore the history of the property need not be traced beyond her.

Alice Ann Jones was a widow, and had rather extensive land holdings, of which the disputed lands form only a small part. In 1928, she made out deeds to each of her 11 children, by which means she divided up the greater part of her estate. The land, including that in controversy, was platted and then divided on the plats and each tract assigned a number. The sons and daughters then drew lots by drawing a number, to determine what his or her property would be, and a deed was made out to each according to the number drawn. The deeds were not delivered to the sons and daughters, however, but were placed in a safe deposit box in a bank by the mother. This box was one held by the mother and one of her daughters jointly. Thereafter, as for some time before, the sons rented the property, or parts of it, from the mother, paying her a rental for it. There is evidence that for the two years prior to her death, she rented the large tract, the ownership of a part of which is in dispute, to Lyman Losee, who owned contiguous property.

In July of 1930, Mrs. Jones, who was then 80 years of age, became ill and was taken to the home of one of her daughters. During this illness, she had two of her daughters go to the bank and get the deeds for her. She made certain corrections on one deed, and executed one further deed, it being a deed to her home, running in favor of her five daughters. After this, she handed all the deeds to one of her daughters, Nellie Jones Sudmire Graham, and instructed her to deliver them, after her death, to the named grantees. The daughter then placed the deeds in a bureau drawer in the same room where mother lay ill. There they remained until the death of the mother in September, 1930. Thereafter, Nellie delivered the deeds as instructed.

As to the general tract in dispute, the children David, George, Edward, Elenora, Ruth and Margaret were given deeds dividing up this tract, but apparently not all of it is covered by the deeds, and some overlapping and discrepancies appear in the deeds as given. The descriptions necessary to this decision are hereafter set out. A part of the property deeded to Margaret, the plaintiffs' grantor, was described as follows:

"Commencing at a point 1.25 chains South of the southwest corner of the Northwest quarter of Northwest quarter of Section 32, Township 8 South, Range 3 East of Salt Lake Base and Meridian, running thence East 5.50 chains; thence North 2° East 5.50 chains; thence West 8 chains more or less to lane; thence South 1° West 5.50 chains; thence East 2.50 chains more or less to place of beginning. Area 4.40 acres."

The deed to Elenora among other property included the following:

"Commencing at a point 14.76 chains North of the Southwest corner of the Northwest quarter of Section 32, Township 8 South, Range 3 East of Salt Lake Base and Meridian, running thence East 10 chains; thence North 81° West 5.20 chains; thence North 2° East 4.25 chains; thence West 8 chains; thence South 1° West 4 chains; thence East 2.50 chains more or less to place of beginning. Area 4 acres more or less."

The north boundary of the tract granted to Elenora overlaps approximately one chain beyond the south boundary of the tract granted to Margaret, and both descriptions overlap on to property owned by Lyman Losee who is not a party to this suit. In addition to these discrepancies, the description of the property conveyed to Elenora, if followed strictly, fails to close, and it also extends to the east on to other property not owned by Alice Ann Jones.

David Jones was given a deed to the following described property:

"Commencing 4.25 chains North of the Southwest corner of the Northwest quarter of Section 32, Township 8 South, Range 3 East,

Salt Lake Base and Meridian, running thence East 5.50 chains; thence North 5.50 chains; thence West 8 chains; thence South 5.50 chains; thence East 2.50 chains to the place of beginning. Area 4.40 acres."

This placed his land considerably to the south of that deeded to Margaret. However, the David Jones' deed was subsequently rerecorded with an interlienation to make the deed read:

"Commencing 4.25 chains North of the *Southwest corner of the Northwest quarter of the Northwest quarter* of Section 32, Township 8 South, Range 3 East, of Salt Lake Base and Meridian, running thence East 5.50 chains; thence North 5.50 chains; thence West 8 chains; thence South 5.50 chains; thence East 2.50 chains to the place of beginning. Area 4.40 acres." (Italics added.)

The deed as re-recorded still does not conflict with the Margaret Jones Ludlow deed, but to the contrary the north boundary of the Margaret Jones Ludlow property and the south boundary of the David Jones property as thus described, coincide. David Jones, however, purchased Elenora's property and also that of his brothers, George and Edward, and his sister, Ruth. Under the deeds as they exist, the only conflict between property descriptions as claimed by Dean Losee through Margaret and that claimed by David Jones, consist of the area of overlap between Margaret's south boundary and the north boundary of Elenora's property now owned by David, and this only in that area toward the east of the property where those descriptions do not overlap the Lyman Losee property. David Jones asserts that at the time the various divisions of the land were staked out preparatory to the drawing of lots by the children, it was intended that his property was to include that deeded to Margaret, and that his south property line should have been contiguous with Lyman

Losee's north boundary. A rough diagram is here inserted to illustrate the overlaps and conflicting descriptions:

- ILLUSTRATIVE ONLY -

A = Margaret Jones Ludlow
B = Lyman Losee
C = Elenora Jones Bingham
x = Point where description
    allegedly fails to close

- Area in which Margaret and Elenora's deeds
. overlap each other and Lyman Losee's Property

- Area in which Margaret's and Elenora's deeds overlap each other only

- Area in which Elenora's deed overlaps on to Lyman Losee's land

The trial court found from the evidence that there had been no delivery of the deeds from Alice Ann Jones to her children and that consequently the deeds were void. The court also concluded that the deed to David Jones was void for the further reason that it had been altered. No question is raised as to that latter ruling. The court accordingly decreed that neither the plaintiffs nor defendants are the owners of the property in question, but that it belongs to the estate of Alice Ann Jones, except as to that portion belonging to Lyman Losee which was encroached upon by the descriptions contained in the deeds from Alice Ann Jones to Margaret and Elenora as previously indicated.

The plaintiff has appealed from the judgment of the lower court and has set out numerous points relied upon for reversal which are argued under three headings. The first and foremost point relied upon by plaintiffs is that the trial court erred in ruling that there was no delivery of the deeds from Alice Ann Jones to her children.

All of the evidence covering the issue of delivery comes from the daughter Nellie to whom the mother entrusted the deeds and their delivery to the other children. Her testimony in substance was that she received the deeds from her mother several weeks prior to the mother's death; that the mother did not want an estate left to be probated and instructed her to deliver the deeds to the named grantees after her death; and that she placed the deeds in a bureau drawer within a step or two of the bed where the mother lay ill. Apparently she acted on her own volition and initiative in so doing. She did state, however, that the mother could have removed the deeds from the bureau drawer had she wanted to; that if the mother had demanded them she would have turned the deeds over to her; and that she didn't think she could remove the deeds prior to the mother's death because she didn't think her mother would have allowed it. Her conclusion was that there was an unqualified delivery to her for the purpose indicated, and she testified that the deeds were never touched by any one from the time she placed them in the drawer, until she removed them, after her mother's death.

Are these facts sufficient to constitute a delivery? In the case of *Singleton* v. *Kelly,* 61 Utah 277, 212 P. 63, this court approved the applicable principles which have almost universal acceptance: That where a grantor executes a deed and places it in the hands of a third party for delivery after the death of the grantor, with the intent that the deed and its delivery are absolute, that the title in fact passes and the third party then holds the deed as trustee for the grantee. The court also recognized that if the delivery is conditional, as where the grantor intends to

retain control over the property and the right to revoke the deed, then such a deed does not pass title. In *Reed* v. *Knudson*, 80 Utah 428, 15 P. 2d 347, an assignment of one-half interest in certain property was upheld where the assignment was left for delivery by the attorney who prepared it for the donor. Therein we approved the rule quoted from 28 C. J. 639 (now 38 C. J. S., Gifts § 25), to the effect that if the deed and its delivery was intended to be irrevocable, then the third party is trustee for delivery of the deed and title passes. But if the intent is that the third party is subject to further directions and control of the grantor, then the third party is merely the agent of the grantor and the title does not pass. See also *Burnham* v. *Eschler*, 116 Utah 61, 208 P. 2d 96; and *Gappmayer* v. *Wilkenson*, 53 Utah 236, 177 P. 763.

The fact that the deeds were placed by the daughter in a bureau accessible to the mother is not determinative, if they were delivered unconditionally and without the right to recall them. *Wilson* v. *Wilson*, 32 Utah 169, 89 P. 643; *Chamberlain* v. *Larsen*, 83 Utah 420, 29 P. 2d 355. Nor does the daughter's statement that if the mother had changed her mind and wanted the deeds back she would have given them to her necessarily affect the question of delivery. *Woolley* v. *Taylor*, 45 Utah 227, 144 P. 1094. It is obvious in the present case that the daughter's conjecture as to whether the mother would let her remove the deeds from the drawer during her lifetime has no weight upon the question of delivery, since it does not appear that the mother in any way qualified the delivery, nor that the deeds were placed in the drawer near her at the instance of the mother. Once there had been a good delivery, there was nothing done or said thereafter which had any effect to invalidate the deeds.

As stated in *Mower* v. *Mower*, 64 Utah 260, 228 P. 911, 914:

"delivery is essentially a matter of intent, which intent is to be arrived at from all the facts and surrounding circumstances",

that is, from the situation and relation of the parties, the kind and character of the property and what is done and said in connection with the preparation, execution and delivery of the deeds. After the mother had announced her intention, she proceeded and carried out the plan; executed the deeds and placed them in the safe deposit box. When her last illness came, she stated her desire that no estate should be left when she died; performed the affirmative act of having the deeds removed from the safe deposit box where they were accessible to another daughter, and where they could have been left for delivery upon her death had her intent been that they should carry the title to the children only at that time. She then delivered the deeds to another daughter with clear and definite instructions to deliver them after her death and there is no hint in the record of any condition or qualification attached to the delivery, or any reservation the mother made as to the delivery. She exercised no further dominion over the deeds, although she remained in the same room with them and within a step or two of them for several weeks. There can be no doubt that Alice Ann Jones intended to give the grantees the property deeded to each at the time she delivered them to her daughter, and everything done was consistent with this intention. We think the record disclosed an unequivocal and valid delivery of the deeds to the daughter Nellie as trustee for the grantees and title was thus conveyed to them.

Appellants next raise the contention that the deed from the mother to Elenora Jones Bingham is void by reason of an erroneous description whereby the calls fail to close. In their brief they quote Patton on Titles, Sec. 74, p. 265, as follows:

"Either as actually described or as construed, the lines themselves must be continuous, one commencing where the other leaves off, and the final line returning to the point of beginning. Otherwise, they do not inclose, and therefore do not describe any tract of land.

"This may be due to omission of one of the lines from the description or to a misdescription of one of the lines. To a certain extent,

however, this situation has been overcome by the fact that the courts will supply the line by intendment when by so doing the boundaries will be complete and will close approximately the acreage called for in the description. Also, a manifest error in the calls may be corrected even to the extent of reversing the direction of a line. Even when the lines are continuous, they may fail to enclose any tract of land owing to failure of the final line to return to the starting point. Unless the description as stated, or as it may be allowably construed, can be made to close, the grant must fail."

In the construction of boundaries, we again find that the intention of the parties is the controlling consideration. *Machado* v. *Title, Guaranty & Trust Co.,* 15 Cal. 2d 180, 99 P. 2d 245; *Park* v. *Wilkinson,* 21 Utah 279, 60 P. 945. In the present case, we believe the Elenora ■ Jones Bingham deed capable of such construction as to form an enclosure in accordance with the intent expressed therein. The deed fixes a definite and clear point of beginning, continues by courses and distances to the last corner, and then concludes:

"* * * thence east 2.5 chains more or less to place of beginning."

In the quoted phrase is expressed the intention that the tract close by extending the final call to place of beginning, and the words "more or less" constitute a tolerance factor which enables this extension of the final distance, beyond the 2.5 chains, in order that the tract close. ■ Where, as here, the intent is manifest and clear that the tract is to close, and the distance call is such that this may be done without violating that call, we conclude that it does close. While it is true that ordinarily in deeds courses are regarded as more certain than distances, where the intention clearly expressed is otherwise, then distances may control. *Louisville Cooperage Co.* v. *Collins,* 228 Ky. 266, 14 S. W. 2d 1090; *Warren* v. *Boggs,* 90 W. Va. 329, 111 S. E. 331; and *Scott* v. *Weisberg,* 3 Tex. Civ. App. 46, 21 S. W. 769. In the present instance, the course in the last call must be varied a slight angle southward and the distance also lengthened slightly to give effect to the clear

intent that the tract close. As stated by this court in the case of *Park* v. *Wilkinson*, 21 Utah 279, 60 P. 945, 946:

"The words used in the deed should be construed so as to ascertain the intention of the parties making it, and when the intention of the parties can be ascertained therefrom, nothing remains to effectuate that intention."

The present situation is somewhat analogous to the rule stated in the *Park* v. *Wilkinson* case, where it is said:

"In a conveyance by natural monuments, distances and quantity, being the most uncertain must yield to the former. 'But when there are no natural monuments or lines called for by which the closing line is to be fixed or ascertained, and no line on the ground, it follows, of necessity, that the survey is to be closed by a direct line between the termini of the lines on the ground, or as fixed by the courses and distances returned to ascertain those termini.'" See also: *Home Owners Loan Corp.* v. *Dudley*, 105 Utah 208, 141 P. 2d 160; *Wharton* v. *Garvin*, 34 Pa. 340; and *Ransberry* v. *Broadhead's Forest & Stream Ass'n*, 315 Pa. 513, 174 A. 97.

David Jones, on the witness stand, indicated that although he had been occupying the land in dispute, that he claimed only under his deeds, and otherwise he had no claim to the property. His deed from his mother gave him no rights in the disputed property. However, by his purchase of the interests of Elenora Jones Bingham, whose deed we uphold, he does have a conflicting interest with the plaintiffs arising out of the overlap heretofore described. Margaret and Elenora each received a deed, and the description in each of those deeds overlaps on the property called for by the other deed. The deeds were delivered simultaneously to the trustee. From all that appears, there is nothing to warrant preference of one of the deeds over the other. In all likelihood, an error on the part of the grantor was responsible for the overlap. If so, however, how are we to determine in whose favor and against whom, the error occurred? From all that appears in the deeds, there is a clearly expressed intention that each should have the controverted property.

The situation seems to be unique and no modern case has been found dealing with the problem. However, some analogous situations have been adjudicated which may shed light upon this situation. In *Young* v. *De Bruhl,* 11 Rich., S. C. 638, 73 Am. Dec. 127, opposing parties claimed under grants bearing the same date. Neither grant was for the parcel in dispute exclusively; each covered it, but each embraced other land outside its limits. The court said:

"We cannot regard either of the grants as void, nor give one priority over the other * * *. We can make nothing else out of this state of affairs but a tenancy in common between these parties."

In *Challefoux* v. *Ducharme,* 4 Wis. 554, there was a grant by Congress to Challefoux and a grant to La Rose, of the same land. The court was unable to distinguish between them as to priority of grant, and held that the parties took the property as tenants in common. In the case of *Erskin* v. *Wood,* 77 Kan. 577, 95 P. 413, two persons settled on the same tract of public land and made improvements and had equal right to purchase the same. Each made payment and received a certificate the same day. The court concluded that the rights appearing to be equal, they were tenants in common.

In the present case, we obviously cannot give preference to either deed from the standpoint of delivery. Nor can we give preference on the basis of priority of survey, since neither tract appears to have followed completely even the rough survey made by the sons and sons-in-law. There are left only the alternatives, either that both conveyances as to the overlap are good, or else both are void. The only way that any effect can be given to the express intention to convey to each is to hold that the deeds created a tenancy in common as to the overlap.

The fact that the deed to Mrs. Ludlow covered land not owned by the grantor as well as land which she did own

does not have the effect of invalidating the deed. As to the part owned by the grantor, there was a good conveyance and so also with the land conveyed to ▊ Elenora Jones Bingham. The fact that Alice Ann Jones failed to dispose of all of her property in accordance with her expressed intention, and that a four-acre tract and a four-rod tract remain undistributed can have no effect on the validity of the other deeds which were given by her. While perhaps a probate will be necessary in view of the discovery of this oversight, this does not affect the validity of the deeds as executed and delivered.

Finally, it is contended by the appellants that the trial court erred in failing to quiet title in them, as against the defendants, to the tract owned by Lyman Losee, and which the appellants have a contract to purchase. In this, we fail to perceive prejudicial error. We are cited ▊ to the recent case of *Pender* v. *Bird,* 119 Utah 91, 1951, 224 P. 2d 1057, which appellants state is conclusive on this point. In that case, however, the defendant was in possession of the property and held a tax title and a title for special improvements assessments. In the present case, there is no question but that actual ownership is in Lyman Losee—there is an admission and a finding to this effect. Thus, the record is clear that neither plaintiffs nor defendants own the Lyman Losee land, and no prejudice arises to the plaintiffs as a result of the finding as made. In view, however, that the case must be reversed, a finding that plaintiffs have a contract of purchase of the Lyman Losee land would be appropriate and proper.

Appellants have raised the incidental contention that even if there was no delivery of the deeds, still plaintiffs would be entitled to prevail on a theory of adverse possession. In view of our holding that there was a good delivery of the deeds, plaintiffs sustain their title by virtue of the deed from Mrs. Ludlow, and it is unnecessary to decide the issue of adverse possession as to that land not affected by the overlap. This appeal does not present the

question of adverse possession as to the overlap, and that issue appears not to have been decided by the trial court, accordingly, we express no opinion as to that question.

Judgment of the lower court is reversed, and the cause remanded for further proceedings in accordance herewith. Costs to appellants.

WOLFE, C. J., and WADE and McDONOUGH, JJ., concur.

HENRIOD, Justice, not participating.